# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | * | |
| DOMINIC NOVAK, et al. | | |
| | * | |
| Plaintiffs | | |
| | * | CASE NO: 1:11-cv-00468(JMF) |
| v. | | |
| | * | |
| DOUGLAS A. LINES, P.C., et al. | | |
| | * | |
| Defendants | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR, IN THE ALTERNATIVE, TO ABSTAIN

Defendants Douglas A. Lines, P.C. and Douglas A. Lines, Esq., by and through their attorneys, Aaron L. Handleman, Justin M. Flint, Christopher F. Copenhaver, and Eccleston and Wolf, P.C., hereby file their Motion to Dismiss Plaintiffs Dominic Novak (hereinafter "Novak"), Regan Zambri & Long, P.L.L.C. (hereinafter "RZL"), and Patrick M. Regan, Esq.'s (hereinafter "Regan") Complaint for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Abstain, pursuant to Federal Rule of Civil Procedure 12(b)(1) and Local Rule 7, and in support thereof states as follows:

1.  Plaintiffs bring claims for Breach of Fiduciary and Ethical Duties (Count I), Breach of Contract (Count II), and Quantum Meruit (Count III).

2.  However, Plaintiffs fail to allege that they have suffered an actual injury. As such, Plaintiffs lack Article III standing to bring Counts I and II, therefore, they should be dismissed.

3.  Further, Plaintiffs' claims are unripe and, therefore, not justiciable at this time. This action is contingent upon the outcome of the parallel action first filed in Chesterfield County,

Virginia (hereinafter "the Virginia action"), and as such this action is premature and need not occur at all.

4. Alternatively, a careful weighing of the factors set forth by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and later in *Moses H. Cone Memor'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) indicates that this Court should abstain from exercising its jurisdiction over Counts I and II in favor of the parallel Virginia action.

5. Similarly, to the extent that this Court finds that Count III has properly sets forth a claim for declaratory relief, the Court should exercise its "substantial discretion" and abstain from exercising its jurisdiction over Count III in favor of the parallel Virginia action. *See Wilton v. Seven Falls Company*, 515 U.S. 277, 286 (1995).

6. This is a dispositive motion and therefore LCvR 7(m) is inapplicable.

7. Defendants hereby incorporate the attached Memorandum of Points and Authorities.

WHEREFORE, for the reasons set forth in this Motion, as well as, the attached Memorandum of Points and Authorities, Defendants Douglas A. Lines, P.C. and Douglas A. Lines, Esq. respectfully request that this Court dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, or, in the alternative, abstain from exercising its jurisdiction over Plaintiffs' claims in favor of the parallel Virginia action.

Respectfully submitted,

ECCLESTON & WOLF, PC

**/s/ Justin M. Flint**

_____

Aaron L. Handleman (#48728)
Justin M. Flint (#491782)
Christopher F. Copenhaver (*pro hac vice*)
1629 K Street, NW
Suite 260
Washington, DC 20006
Tel:  (202) 857-1696
Fax:  (202) 867-0762
handleman@ewdc.com
flint@ewdc.com
copenhaver@ewdc.com
*Counsel for Defendants*

## REQUEST FOR ORAL ARGUMENT

The Defendants, by and through undersigned counsel, respectfully request that the Court

hear oral arguments regarding this Motion to Dismiss for Lack of Subject Matter Jurisdiction, or

in the Alternative, to Abstain.

**/s/ Justin M. Flint**

_____

Justin M. Flint

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of August, 2011, a copy of the aforegoing Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, to Abstain, Memorandum of Point and Authorities, and proposed Order was served via the PACER ECF/electronic filing system on:

Patrick M. Regan (#336107)
Paul Cornoni (#489398)
Regan Zambri & Long, PLLC
1919 M Street, NW, Suite 350
Washington, DC 20036
Tel: (202) 463-3030
Fax: (202) 463-00667
pregan@reganfirm.com
pcornoni@reganfirm.com
*Counsel for Plaintiffs*

**/s/ Justin M. Flint**

_____

Justin M. Flint

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| DOMINIC NOVAK, et al. | * |
| | * |
| Plaintiffs | * |
| | *   CASE NO:  1:11-cv-00468(JMF) |
| v. | * |
| | * |
| DOUGLAS A. LINES, P.C., et al. | * |
| | * |
| Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS' MEMORANDUM OF POINT AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION,**
**OR IN THE ALTERNATIVE TO ABSTAIN**

Defendants Douglas A. Lines, P.C. and Douglas A. Lines, Esq., by and through their

attorneys, Aaron L. Handleman, Justin M. Flint, Christopher F. Copenhaver, and Eccleston and

Wolf, P.C., hereby file this Memorandum of Points and Authorities in Support of their Motion to

Dismiss Plaintiffs Dominic Novak's (hereinafter "Novak"), Regan Zambri & Long, P.L.L.C.'s

(hereinafter "RZL"), and Patrick M. Regan, Esq.'s (hereinafter "Regan") Complaint for Lack of

Subject Matter Jurisdiction, or in the Alternative, to Abstain, pursuant to Federal Rule of Civil

Procedure 12(b)(1) and Local Rule 7, and in support thereof states as follows:

**I.      Introduction**

Plaintiffs bring claims for Breach of Fiduciary and Ethical Duties (Count I), Breach of

Contract (Count II), and Quantum Meruit (Count III).  However, Plaintiffs lack Article III

standing to bring Counts I and II, therefore, they should be dismissed.  Further, all of Plaintiffs'

claims are unripe and, therefore, not justiciable at this time.  As such, the Court should dismiss

this action in favor of the parallel Virginia action.  Alternatively, to the extent this Court finds

that it has jurisdiction over any of Plaintiffs' claims, this Court should abstain from exercising that jurisdiction.

## II.    Statement of Facts

Underlying this action is a lawsuit filed in the United States District Court for the District of Columbia on or around January 8, 2001, styled *Novak v. Capital Management, et al.*, Civil Action No. 01-00039 (HHK/JMF) (herinafter "the Novak litigation"). Compl. ¶ 15.  The Novak litigation, brought by Plaintiff Dominic Novak, concerned injuries he received when he was assaulted while leaving the Zei Club in Washington D.C.  *Id.* ¶ 10.

Plaintiffs allege that "[i]n approximately 2000, Plaintiff Novak originally retained attorney E. Wayne Powell and the law firm of Powell & Parrish, P.C. to represent him in his claims for damages against the owners and operators of the Zei Club for failing to provide reasonable security for patrons as they exited the club." *Id.* ¶ 12.  The Plaintiffs further allege that "[o]n or around January 7, 2001, Mr. Powell chose to associate with the Lines Defendants with respect to the representation of Plaintiff Novak and another individual, George D. Valdivia, for injuries suffered as a result of the violent attack outside the Zei Club on March 22, 1998." *Id.* ¶ 14.  It is undisputed that Novak agreed that attorney's fees associated with Novak litigation would be paid on a contingency basis.

Plaintiffs claim that "[i]n approximately June 2002, Mr. Powell and/or Defendant Douglas Lines, Esq. contacted Plaintiff Patrick M. Regan . . . and requested that Regan and his law firm enter its appearance and take over the representation of Mr. Novak and Mr. Valdivia in this matter." *Id.* ¶ 20.  Plaintiffs claim that "[i]n June of 2003, and as a result of the difficult and complex nature of the litigation, as well as the complete failure of Douglas A. Lines, Esq. to perform any legal work, Plaintiffs Dominic Novak, RZL and Patrick M. Regan, as well as

Wayne E. Powell, entered into a supplemental retainer agreement." *Id.* ¶ 23. "The Novak litigation was ultimately tried to a jury in May 2007 and resulted in a verdict of $4,111,772.00. Following an appeal to the United States Court of Appeals for the District of Columbia, the verdict was upheld in August 2009." *Id.* ¶ 17.

Plaintiffs further claim that,

[d]espite Plaintiff Novak's entering into the new agreement with Plaintiffs Patrick M. Regan and RZL, which discharged Douglas Lines from the case in 2003, Douglas Lines has now attempted to unethically assert claims for several hundred thousand dollars of legal fees for work allegedly performed on a case pending in a jurisdiction in which he was not licensed to practice law.

*Id.* ¶ 29. Plaintiffs assert that "[t]he Lines Defendants have filed a frivolous lawsuit in Chesterfield, Virginia seeking legal fees to which they are not entitled" and that this lawsuit "represents a breach of the Lines Defendants' fiduciary, contractual and ethical duties to Plaintiff Dominic Novak since they are seeking to obtain a fee from Novak to which they are not entitled." *Id.* ¶¶ 30, 31. The Virginia action was filed on August 24, 2010, *see* Ex. A, and is styled as *Douglas A. Lines, P.C., et al. v. Patrick M. Regan, et al.*, CL10-2380. *See* Ex. B. Novak is not a party to the Virginia action. *See id.*

Plaintiffs further allege that they "have placed sufficient funds in a trust account in an amount more than adequate to compensate Defendant Lines, on a *quantum meruit* basis . . . ." *Id.* ¶ 33. In fact, all but $69,000 dollars of the proceeds of the Novak litigation have been dispersed from Plaintiff RZL's client trust account. *See* Ex. C at 8-9. Plaintiffs state that "to the extent that this Court ultimately determines that Lines is entitled to any of the funds in the escrow account, any remaining funds are to be distributed directly to Plaintiff Dominic Novak." *Id.* ¶ 33.

Plaintiffs Regan and RZL were served with the complaint in the Virginia action on March 2, 2011. *See* Ex. D.  Plaintiffs filed this action on the following day, alleging that "[j]urisdiction is vested in this Court pursuant to 28 U.S.C. 1332 as complete diversity exists between all adverse parties and the claims herein exceed the jurisdictional amount." Compl. ¶ 1.[1]  In Count I of their Complaint, the Plaintiffs state that "notwithstanding the ethical and fiduciary duties the Defendants owed to Plaintiff Novak, Defendants breached the applicable fiduciary and ethical duties owed to Plaintiff." *Id*. ¶ 38.  In support of Count I, Plaintiffs allege that Defendants breached the duties owed to Plaintiff Novak by "seeking to obtain a legal fee which Defendants did not earn and are not entitled to under the law and the D.C. Rules of Professional Conduct." *Id*. ¶ 39.  Plaintiffs further allege that,

> as a direct and proximate result of the Defendants' combined breaches of their fiduciary and ethical duties, the Plaintiffs suffered financial harm, including but excluding, the withholding of settlement funds until the fee dispute is resolved; loss of opportunity to use the aforementioned settlement funds; monetary interest on such financial compensation running from August of 2009; legal fees and costs surrounding the fee dispute; as well as any and all related economic harms thereto.

*Id*. ¶ 40.

In Count II, Plaintiffs allege that Defendants breached contractual duties owed to Novak. In support of Count II, Plaintiffs allege that "the Lines Defendants contracted with Plaintiff

---

[1] Plaintiffs allege that "[j]urisdiction is vested in this Court pursuant to 28 U.S.C. 1332 as complete diversity exists between all adverse parties and the claims herein exceed the jurisdictional amount." Compl. ¶ 1. Here, Plaintiffs allege that "at all times relevant to this matter, [Regan] was a resident of the state of Maryland and was a licensed attorney at RZL." *Id*. ¶ 5. However, Plaintiffs make no allegation regarding the citizenship of Plaintiff Regan and, therefore, fail to allege that Plaintiff Regan has citizenship diverse from that of Defendants. *See generally id.* The United States Court of Appeals for the District of Columbia Circuit has stated, "an allegation of residence alone is insufficient to establish the citizenship necessary for diversity jurisdiction." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) (citation omitted).  "Citizenship is an essential element of federal diversity jurisdiction; failing to establish citizenship is not a mere technicality. The party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Id.* (citation omitted).  As such, Plaintiffs have not properly pled the citizenship of each party to this action.  Therefore, Plaintiffs have failed to properly invoke the subject matter jurisdiction of this Court.

Novak to provide competent legal services for Plaintiff Novak's benefit in exchange for good and valuable consideration." *Id.* ¶ 41. Plaintiffs go on to allege that,

> the Lines Defendants breached the contract with Plaintiff Novak by attempting to seek a legal fee which was not earned, failing to perform any substantive legal services and by attempting to seek a legal fee which was not earned or proper under the District of Columbia Rules of Professional Conduct, as well as the substantive law of the District of Columbia.

*Id.* ¶ 46. Plaintiffs further claim,

> that as a direct and proximate result of the Defendants' combined breaches of the contract, the Plaintiffs suffered financial harm, including but excluding, the withholding of settlement funds until the fee dispute is resolved; loss of opportunity to use the aforementioned settlement funds; monetary interest on such financial compensation running from August of 2009; legal fees and costs surrounding the fee dispute; as well as any and all related economic harms thereto.

*Id.* ¶ 47.

In Count III, Plaintiffs bring a claim for *quantum meruit*. In support of this claim, Plaintiffs,

> allege and plead in the alternative that the [sic] should this Court determine that despite his unethical and illegal conduct, Defendant Lines and or his law firm are entitled to some legal fee from Plaintiff Novak, or any of the other Plaintiffs, any such legal feel [sic] should be limited to *quantum meruit* based upon the fact that Defendant Lines failed to perform any substantive legal work during the 7 years prior to the successful conclusion of the claim.

*Id.* ¶ 48.

## III.    Standard of Review

"Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos*, 2011 U.S. Dist. LEXIS 66324 at *7 (June 22, 2011) (citation omitted). It is "presumed that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 US 312, 316 (1991) (citation omitted). "It is the responsibility of the complainant clearly to allege facts

demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Id.* "A court must dismiss a case when it lacks subject matter jurisdiction." *Bazarian*, 2011 U.S. Dist. LEXIS 66324 at *7 (citation omitted).

"The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." *Bazarian*, 2011 U.S. Dist. LEXIS 66324 at *8 (citations omitted). "In evaluating subject matter jurisdiction, the Court, when necessary, may look outside the Complaint to undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citations omitted).

## IV. <u>Standing</u>

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citation omitted)[2]. To meet the requirement for Article III constitutional standing, the plaintiff must establish (1) that he "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and (2) that the injury "fairly can be traced to the challenged action," and (3) "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982) (citation omitted).

---

[2] During the July 27, 2011 hearing and in its subsequent Memorandum Order, this Court referred the parties to several cases all of which are cited or addressed in this memorandum: *Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Handy v. Shaw, Bransford, Velleux & Roth*, 325 F.3d 346 (D.C. Cir 2003); *Reiman v. Bromley Smith*, 12 F.3d 222 (D.C. Cir. 1993); *1443 Chapin Street, LP v. PNC Bank, Nat'l Assoc'n*, 718 F. Supp. 2d 78 (D.D.C. 2010). *See* Ex. E.

a.  <u>Counts I and II</u>

In support of Count I, Plaintiffs allege that Defendants breached fiduciary and ethical duties owed to Novak.  *See* Compl. ¶¶ 38, 39.  However, Plaintiffs fail to allege that Defendants breached fiduciary or ethical duties owed to RZL or Regan.  *See generally id.*  In support of Count II, Plaintiffs allege that Defendants breached contractual duties owed to Novak.  *See* Compl. ¶¶ 41, 46.  Again, however, Plaintiffs fail to allege that Defendants breached any contractual duty owed to RZL or Regan.  *See generally id.*  As such, Plaintiffs RZL and Regan fail to bring claims in Counts I and II, let alone allege facts sufficient to establish the requisite standing to do so.  Therefore, Counts I and II should fail as to Plaintiffs RZL and Regan. However, even if it could be argued that Plaintiffs RZL and Regan have pled a claim in Counts I and II, these claims otherwise fail for lack of standing.

>    i.  *Plaintiffs RZL and Regan fail to allege that they have suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.*

To show Article III standing, Plaintiffs Regan and RZL must establish that they have some "personal stake in the outcome" of each claim.  *Lyons*, 461 U.S. at 101 (citation omitted). In support of Counts I and II, Plaintiffs state that they "have suffered financial harm, including but excluding, the withholding of settlement funds until the fee dispute is resolved; loss of opportunity to use the aforementioned settlement funds; monetary interest on such financial compensation running from August of 2009 . . . ."  Compl. ¶¶ 40, 47.  Regan has confirmed that all but $69,000 dollars of the proceeds of the Novak litigation have been dispersed from Plaintiff RZL's client trust account. *See* Ex. C at 8-9.  However, Plaintiffs state that "to the extent that this Court ultimately determines that Lines is entitled to any of the funds in the escrow account, any remaining funds are to be distributed directly to Plaintiff Dominic Novak."  *Id.* ¶ 33.

Plaintiffs RZL and Regan have made no claim to these funds, nor have they claimed that they had any expectancy that they would be able to utilize these funds. *See generally id*. As such, Plaintiffs RZL and Regan fail to allege that they have been denied the use of the settlement funds or that they have they suffered some actual or threatened financial injury resulting from the withholding of the settlement funds.   Therefore, Plaintiffs RZL and Regan fail to allege some actual or threatened injury.

Plaintiffs further state that they "have suffered financial harm, including . . . legal fees and costs surrounding the fee dispute." *Id*. ¶¶ 40, 47.  However, Plaintiffs fail to allege that their claim for legal fees falls within any valid exception to the American rule. *See generally* Compl. The District of Columbia does not recognize an exception to the American rule regarding legal fees and costs "in defending against an action for fees or prosecuting a professional malpractice or breach of fiduciary duty claim against his former attorney." *Shapiro, Lifschitz & Schram v. Hazard*, 24 F. Supp. 2d 66, 73 (D.D.C. 1998).   As such, Plaintiffs RZL and Regan have failed to allege that they have suffered a legally cognizable harm and they lack standing to bring this claim.  Therefore, to the extent that Plaintiffs Regan and RZL attempt to bring claims in Counts I and II, they lack standing to do so.

> ii.  *Plaintiff Novak fails to allege that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the Defendants.*

Plaintiffs state that they "have suffered financial harm, including . . . legal fees and costs surrounding the fee dispute." Compl. ¶¶40, 47.  However, Novak is not a party to the Virginia action. *See* Ex. B.  Therefore, Novak cannot allege that he has incurred legal fees or expenses in relation to the Virginia action.  Further, even if Plaintiff Novak has incurred legal fees and costs related to the underlying fee dispute, they do not represent a legally cognizable harm. *See*

8

*Hazard*, 24 F. Supp. 2d at 73. As such, Plaintiff Novak has failed to allege that he has suffered a legally cognizable harm and he lacks standing to bring this claim.

> b. <u>Count III</u>

In Count III, Plaintiffs bring a claim for *quantum meruit*. The concept of *quantum meruit* provides the basis for and measurement of damages in cases of (1) breach of implied contract or (2) compensation in quasi-contract. *See TVL Assocs. v. A & M Constr. Corp.,* 474 A.2d 156, 159 (D.C. 1984) (citation omitted). A claim for *quantum meruit* requires the plaintiff to prove (1) that plaintiff performed valuable services for the defendant, (2) that the defendant accepted, used, and enjoyed plaintiff's services, and (3) that the circumstances reasonably put defendant on notice that plaintiff expected to be paid by defendant. *See Fischer v. Estate of Flax*, 816 A.2d 1, 10-11 (2003) (citation omitted). Therefore, a claim for *quantum meruit* belongs to the party seeking compensation for valuable services conferred upon another party. Here, Plaintiffs do not attempt to recover compensation for valuable services conferred upon Defendants. *See* Compl. ¶ 48. Rather, Plaintiffs attempt to assert a claim that belongs to Defendants. *Id.* Plaintiffs have no standing to assert such a claim on the Defendants' behalf. As such, Count III fails to state a claim for which relief may be granted.

## V.    <u>Ripeness</u>

"Ripeness is a justiciability doctrine drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *In re Aiken County*, 2011 U.S. App. LEXIS 13384 at *11 (D.C. Cir. July 1, 2011) (citation omitted). Courts have described these as two related, but distinct, inquiries: constitutional ripeness and prudential ripeness. *See Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003); *Wyo. Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) ("[A]n Article III court cannot

entertain the claims of a litigant unless they are 'constitutionally and prudentially ripe.'" (citation omitted)).

"Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary." *Simmonds*, 326 F.3d at 357. This inquiry therefore, "goes, in a fundamental way, to the existence of jurisdiction." *Id.* Prudential ripeness, on the other hand, "is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." *Id.*

### a. Constitutional Ripeness

"Just as the constitutional standing requirement for Article III jurisdiction bars disputes not involving injury-in-fact, the ripeness requirement excludes cases not involving present injury." *Wyo. Outdoor Council*, 165 F.3d at 48. As was stated above, Plaintiffs lack standing to bring Counts I and II because they have failed to allege that they personally have suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. For same reasons Plaintiffs' lack standing to bring Counts I and II, Plaintiffs' fail to meet the standard for constitutional ripeness and Counts I and II should be dismissed. *See supra* section IV.

### b. Prudential Ripeness

"The ripeness doctrine, even in its prudential aspect, is a threshold inquiry that does not involve adjudication on the merits and which may be addressed prior to consideration of other Article III justiciability doctrines." *In re Aiken County*, 2011 U.S. App. LEXIS 13384 at *12 (D.C. Cir. 2011) (citation omitted). When analyzing prudential reasons for refusing to exercise jurisdiction, courts apply a two-pronged balancing test to determine whether a case is ripe for adjudication. In doing so, courts must evaluate both "the fitness of the issues for judicial

decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300-01 (1998).

#### i. *Fitness for Judicial Review (Counts I and II)*

Determining whether a claim is fit for judicial review "requires a weighing of the sensitivities of the issues presented and whether there exists a need for further factual development." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

In *Terra Nova Ins. Co. v. Distefano*, 663 F. Supp. 809 (D.R.I. 1987), the district court was presented with the question of "whether an independent federal action, whose viability is contingent upon the outcome of parallel state court proceedings, is ripe for adjudication?" *Id.* at 809. Prior to the initiation of the federal court action, defendants filed suit against their insurer, Terra Nova, in state court alleging that it acted in bad faith when it refused to pay the full amount of their claims arising out of a construction accident. *Id.* at 810. Subsequently, Terra Nova filed suit against defendants in federal court, alleging that the insurance claim "was one incident in a pattern of racketeering activity violative of RICO." *Id.*

The district court found that Terra Nova's RICO action was contingent upon the outcome of issues which may be decided in the state court action and, therefore, was not ripe for adjudication. *Id.* at 810-11. Specifically the district court found that if the defendants were successful in "their bad-faith claims in state court, then it would have been determined that Terra Nova acted in bad faith in refusing to pay defendants under the policy." *Id.* The district court, therefore, found that a "finding of bad faith on the part of Terra Nova . . . necessarily would

11

imply that the [defendants] proceeded against the company in good faith or non-fraudulently"
thereby, foreclosing Terra Nova's ability to allege that it was injured as result of the defendants'
claim. *Id.* at 811. As such, the district court found that Terra Nova's federal court action was
unripe and not fit for judicial review because the action before the district court "may not occur
at all." *Id.*

> Here, the same logic applies. In Counts I and II Plaintiffs allege that,

> as a direct and proximate result of the Defendants' combined breaches of their
> fiduciary and ethical duties, the Plaintiffs suffered financial harm, including but
> excluding, the withholding of settlement funds until the fee dispute is resolved;
> loss of opportunity to use the aforementioned settlement funds; monetary interest
> on such financial compensation running from August of 2009; legal fees and costs
> surrounding the fee dispute; as well as any and all related economic harms
> thereto.

Compl. ¶¶ 40, 47. As these allegations indicate, Plaintiffs seek compensation for damages
incurred as a result of the fee dispute and the resulting Virginia action, which they allege is
"frivolous." *Id.* ¶ 30. However, if Defendants are successful in the Virginia action, it would
necessarily imply that the Virginia action was not frivolous and, further, that Defendants
proceeded in good faith in seeking fees for work performed in the Novak litigation. As such,
Plaintiffs would be foreclosed from bringing a claim for damages resulting from the fee dispute
or the Virginia action. As such, Counts I and II are unripe and not fit for judicial review at this
time.

### ii. *Fitness for Judicial Review (Count III)*

Defendants deny that Count III constitutes a properly pled claim for declaratory relief,
however, to the extent that the Court finds it is sufficient, Count III is not ripe for judicial review.
"While the Declaratory Judgment Act allows a court to issue a judgment before an injury is
accomplished, there must be an actual controversy at issue." *Permanent Gen. Assur. Corp. v.*

*Moore*, 341 F. Supp. 2d 579, 581 (D.S.C. 2004) (citation omitted).  A declaratory judgment may not be given for a purely hypothetical situation or as an advisory opinion. *Bazarian*, 2011 U.S. Dist. LEXIS 66324 at *9-10 (citations omitted).

In *Permanent Gen. Assur. Corp. v. Moore*, 341 F. Supp. 2d 579 (D.S.C. 2004), plaintiff Permanent General sought a declaratory judgment stating that it had not acted in bad faith when it declined to settle a claim against one of its insureds.  Prior to the filing of the federal court action, Permanent General rejected a claimant's offer to settle a claim he had brought against one of Permanent General's insured for the policy limits.  *Id.* at 580.  In response to Permanent General's rejection of his settlement offer, the claimant filed suit against the insured in state court. *Id.*  Permanent General then offered to settle for the policy limits but was rebuffed by the claimant who claimed that Permanent General acted in bad faith in rejecting the previous settlement offer. *Id.*  Aware that an insurer could be held liable for the amount of a judgment in excess of the policy limits if it is determined that that the insurer acted in bad faith in not settling the claim, Permanent General filed for a declaratory action in federal court seeking a declaration that it had not acted in bad faith. *Id.*  But the district court dismissed the action as unripe, concluding that the action was premature because a judgment had not been entered in the state action that exposed the insured to a verdict in excess of the insurance policy limits.  *Id.* at 581.

Here, the same logic applies.  To the extent that the Court resolves that Plaintiffs, through Count III, seek a declaration that Defendants are not entitled to some or all of the attorney's fees which they seek, the action is premature.  Plaintiffs do not allege that any judgment has been issued in the Virginia action which awards Defendants fees. *See generally* Compl. Nor do Plaintiffs otherwise allege that Defendants have been paid any fees in relation to the Novak litigation.  *See generally id.*  Further, if Defendants are unsuccessful in the Virginia action, any

need for a declaration that Defendants are not entitled to some or all of the attorney's fees which they seek would be rendered moot. As such, to the extent Count III could possibly be interpreted as a prayer for declaratory relief, it is premature and not fit for judicial review.

### iii. Hardship (Counts I and II)

The doctrine of prudential ripeness also requires consideration of "the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300-01 (1998). In *Distefano*, Terra Nova contended that its hardship would be great because it would continue to incur legal expenses and costs in defending the state court action. *Distefano*, 663 F. Supp. at 812. The district court was not persuaded by this argument, noting that Terra Nova did not file its RICO action until three years after the original harm. *Id.* The district court found that if Terra Nova had been suffering such a hardship it would not have waited so long to bring its RICO action. *Id.* (noting that it "is painfully clear that Terra Nova filed its RICO action when it did, merely to coerce a settlement from [defendants] in the state court proceedings").

Here, Plaintiffs claim that they have "suffered financial harm, including but excluding, the withholding of settlement funds until the fee dispute is resolved; loss of opportunity to use the aforementioned settlement funds; monetary interest on such financial compensation running from August of 2009; legal fees and costs surrounding the fee dispute . . . ." Compl. ¶ 40, 47 (emphasis added). However, not until the day after Plaintiffs Regan and RZL were served with the Virginia complaint in March of 2011 did Plaintiffs file the instant action. *See* Ex. D. It is, therefore, apparent, as it was in *Distefano*, that the hardship being suffered by Plaintiffs is slight and does not outweigh the hypothetical and contingent nature of Plaintiffs claims. As such, this action is unfit for judicial review.

## VI.    <u>Abstention Doctrine</u>

The Supreme Court has stated that a "district court may abstain from exercising jurisdiction in certain exceptional circumstances of parallel, duplicative litigation in the interest of sound 'judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 70 (D.D.C. 2001) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

    a.   Counts I and II

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and later in *Moses H. Cone Memor'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983), the Supreme Court articulated six factors that inform a district court's discretionary decision whether to abstain from exercising its jurisdiction for reasons of wise judicial administration. As are relevant here[3], these considerations include: (1) the desirability of avoiding piecemeal litigation; (2) the order of jurisdiction in the concurrent forums; (3) whether the case involves federal law; and (4) whether the state-court proceeding can adequately protect the parties' rights. *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001) (citing *Moses H. Cone Memor'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-26 (1983)). An examination of these factors overwhelmingly weighs heavily in favor of abstention.

---

[3] The Supreme Court has also noted that a district court may consider (1) whether one court assumed jurisdiction over property first; (2) the inconvenience of the federal forum. *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001) (citing *Moses H. Cone Memor'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-26 (1983)). However, this action is not an *in rem* action and no court has assumed jurisdiction over the property. Therefore, this consideration does not appear to be applicable. Further, while Defendants' chosen forum for this dispute is the Circuit Court for Chesterfield County Virginia, the current forum is not so inconvenient as to be at issue in this analysis.

*i.  The desirability of avoiding piecemeal litigation.*

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001) (citation omitted).  In *Foster-El*, the district court found that abstention was appropriate, relying in part on the fact that the federal case and the state case were not "mirror actions" in that a decision by the federal court would not necessarily dispose of "all the parties claims in the [state] suit." *Id.* at 72 (citation omitted).  The Court also noted that the parties to the two suits were not identical and that even if the proceedings continued in the federal case, any decision would not necessarily be binding on all of the state court parties. *Id.* The Court concluded that "allowing the proceedings to continue in [federal] court would result in a messy, piecemeal litigation because the parties would litigate identical questions of law applied to identical facts in two separate forums." *Id.* (citation omitted).

Here, piecemeal litigation would certainly ensue if the Court were to exercise jurisdiction.  In the Virginia action, Defendants have made claims against E. Wayne Powell and Jonathan Halperin, neither of whom are parties to this action.  *See* Ex. B.  Therefore, any determination made in this action would not necessarily be determinative of the rights as between Defendants on the one hand and Powell or Halperin on the other.  Further, while the parties in the two actions are not identical, many, if not all, of the legal and factual issues are common to both.  In the Virginia action, Defendants assert several claims in an attempt to recover attorney's fees earned as a result of work performed in relation to the Novak litigation. *See* Ex. B. In the instant action, Plaintiffs allege that Defendants have breached certain duties by seeking fees in relation to the Novak litigation to which they are not entitled.  *See generally* Compl.  Whether Defendants are entitled to the legal fees sought in the Virginia action is,

therefore, at issue in both the instant action and the Virginia action.  As such, the possibility of

piecemeal litigation weighs heavily in favor of abstention.[4]

### ii.  The order of jurisdiction in the concurrent forums.

Defendants filed the Virginia action on August 24, 2010.  *See* Ex. A.  Plaintiffs Regan

and RZL were served with the Complaint in the Virginia action on March 2, 2011.  *See* Ex. D.

Plaintiffs filed the instant action the following day on March 3, 2011.   Therefore, the order of

jurisdiction favors abstention in this action.[5]

### iii.  Whether the case involves federal law.

Plaintiffs have not asserted federal question jurisdiction.  *See* Compl. ¶¶ 1-2.  Nor do

Counts I or II raise any issues of federal law.  *See generally* Compl.  As such, this Court is in no

more favorable position than the state court to adjudicate the relevant questions of state law.

While the absence of federal law does not always warrant abstention, *Foster-El*, 163 F. Supp. 2d

---

[4]  In *Reiman v. Bromley Smith*, 12 F.3d 222, 224 (D.C. Cir. 1993), the D.C. Circuit stated that "[a] citation to Colorado River and the invocation of such general consideration as avoiding a 'waste of judicial resources' and 'piecemeal litigation' does not satisfy the requirement of careful balancing laid down by the Court in *Moses H. Cohn*."  However, the *Reiman* Court was merely indicating that a court must conduct a thorough analysis of all the *Moses* factors before it makes the decision to abstain in favor of parallel state court litigation.  Similarly, in *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003), the D.C. Circuit remanded the action for further consideration because the District Court had failed address the factors set forth in *Moses* and *Colorado River*.  In *1443 Chapin Street, LP v. PNC Bank, Nat'l Assoc'n*, 718 F. Supp. 2d 78 (D.D.C. 2010), the Court was asked to stay or dismiss a third-party complaint in favor of an identical state court action.  The Court was not asked to abstain from exercising its jurisdiction over the complaint or counterclaim.  The Court found that although piecemeal litigation may occur if the third-party action was allowed to go forward, dismissing the third-party complaint would not resolve the problem of piecemeal litigation because the complaint and counterclaim, which involved many of the same issues as the third-party complaint, would not be dismissed.  As such, any determinations of law or fact with regard to the complaint or counterclaim could still conflict with determinations made in the state court proceedings. *Id*. at 84.  Here, that would not be the case.  Defendants respectfully request this Court abstain from exercising its jurisdiction over this matter in its entirety.  Therefore, abstention would fully avoid the threat of piecemeal litigation.
[5]  In *1443 Chapin Street, LP v. PNC Bank, Nat'l Assoc'n*, 718 F. Supp. 2d 78 (D.D.C. 2010), the Court found although the state court action had progressed significantly further than the federal court action, "abstention is unlikely to result in a more efficient use of judicial resources as the Court will likely need to resolve many of the same issues whether or not it stayed or dismissed the Third-Party Complaint."  *Id*. at 85.  This is not the case here. In *1443 Chapin Street, LP*, the moving party was only asking the party to dismiss or stay the third-party complaint leaving the Court to adjudicate the remaining issues in the complaint and counterclaim.  Here, if the Court issued an order dismissing or staying the Complaint, no issues would remain for this Court to address.

at 73, here, the lack of a federal question, taken into consideration with the other factors, counsels in favor of abstention.

> iv. *Whether the state-court proceeding can adequately protect the parties' rights.*

In finding that the parties' rights would be adequately protected, the Court in *Foster-El*, noted that the federal case involved only issues of state law and, therefore, the state court would be in no less a position to protect the parties rights than would the federal court. *Foster-El*, 163 F. Supp. 2d at 73. *See also 1442 Chapin Street, LP*, 718 F. Supp. 2d at 85. The court also noted that the more comprehensive nature of the state case favored abstention. *Foster-El*, 163 F. Supp. 2d at 73.

The instant action involves only issues of state law and, therefore, the state court in Virginia is in a no less advantageous position to protect the parties' rights than would this Court. Also, in the Virginia action, Defendants have made claims against E. Wayne Powell and Jonathan Halperin, neither of whom, are parties to this action. *See* Ex. B. Therefore, any determination made in this action would not necessarily be determinative of the rights as between Defendants on the one hand and Powell or Halperin on the other. As such, the Virginia action would provide a more comprehensive adjudication of the issues.

Further, even though Plaintiff Novak is not a party to the Virginia action, Plaintiffs cannot assert that his rights will not be adequately protected in that action. While Plaintiffs Regan and RZL are parties to both the instant action and the Virginia action, they also serve as counsel for Novak in the instant action. Plaintiffs Regan and RZL would be duty bound as his attorneys in the instant action to protect the rights of Plaintiff Novak in the Virginia action to the extent that the $69,000 held in escrow is at issue in the Virginia action, as well as, to refrain from knowingly taking a position adverse to their client's asserted interests in this action. Therefore,

this Court should exercise its discretion and abstain from exercising its jurisdiction over Counts I and II.

   b. Count III (Quantum Meruit)

   Again, Defendants do not concede that Count III constitutes a properly pled claim for declaratory relief, nor do Defendants concede that the Court has subject matter jurisdiction over any such claim. However, to the extent that the Court finds that Count III has sufficiently pled an action for declaratory relief and that the Court has subject matter jurisdiction over it, the Court should, nevertheless, abstain from exercising that jurisdiction.

   "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Company*, 515 U.S. 277, 286 (1995). "[T]here is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." *Wilton v. Seven Falls Company*, 515 U.S. 277, 287 (1995) (citation omitted). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Id*. at 287 (citation omitted).

   In *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995), the Supreme Court was asked to review a district court's order which stayed an action brought under the Declaratory Judgment Act in favor of parallel state court litigation. In granting the stay, the district court observed that the state court action encompassed the same issues raised in the federal declaratory judgment action and determined that a stay was warranted to avoid piecemeal litigation and to bar plaintiff's attempt at forum shopping. *Id*. at 280. Plaintiff appealed, arguing that the district court should have applied the "exceptional circumstances" test set forth in *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).

The Court granted certiorari "to resolve Circuit conflicts concerning the standard governing a district court's decision to stay a declaratory judgment action in favor of parallel state litigation." *Wilton*, 515 U.S. at 281. In doing so, the Court concluded that the "discretionary standard" set forth in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942), and not the "exceptional circumstances" test developed in *Colorado River* and *Moses*, governs a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings. *See Wilton*, 515 U.S. at 289-90. The Court further found that a district court's decision to stay a declaratory action in favor of parallel state court litigation can only be reviewed for abuse of discretion. *Id.*

The *Wilton* Court found that "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id*. at 282. The Court noted that "[o]n its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration,'" *Id*. at 286 (quoting 28 U.S.C. § 2201(a)), and that this "textual commitment to discretion, and the breadth of leeway [the Supreme Court] ha[s] always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Id*. at 286-87 (citations omitted).

Under *Brillhart* "[t]he question for a district court presented with a suit under the Declaratory Judgment Act . . . is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be

settled in the proceeding pending in the state court.'" *Id.* at 282 (quoting *Brillhart*, 316 U.S. at 495). Here, to the extent the Court finds that Plaintiffs have properly pled an action under the Declaratory Judgment Act, the Court should apply its discretion and abstain from exercising jurisdiction. In adjudicating the Virginia action, the state court will be required to determine the extent to which Defendants are entitled to legal fees relating to the Novak litigation. If Defendants are unsuccessful in the Virginia action, any possible utility that this Court could provide by asserting jurisdiction over Count III would be eviscerated.

The United States Court of Appeals for the District of Columbia Circuit has also listed several relevant factors to be considered when deciding whether to exercise jurisdiction over a claim for declaratory relief:

> [W]hether a [declaratory judgment] would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

*Swish Mktg., Inc. v. F.T.C.*, 669 F. Supp. 2d 72, 76-77 (D.D.C. 2009) (quoting *Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976). An examination of these factors[6] overwhelmingly weighs in favor of abstention.

### i. Whether a declaratory judgment would finally settle the controversy between the parties.

To the extent that the Court finds Plaintiffs have pled a claim for declaratory relief, it cannot be assumed that Plaintiffs will prevail in such a claim. The Court might rule that Defendants are entitled to all of the attorney's fees they are seeking. To the extent that the Court were to declare that the Defendants are entitled to fees in excess of the $69,000 held in escrow,

---

[6] This Memorandum does not address "the public importance of the question to be decided" factor or the "convenience of the parties" factor as they are not relevant to this analysis.

issues regarding liability for that amount would be raised but not resolved. In the Virginia action, Defendants have also made claims for punitive, treble, and statutory damages. *See* Ex. B at 13-14. Therefore, piecemeal litigation would ensue.

### ii. *Prevention of procedural fencing.*

Another important consideration is whether Plaintiffs are engaged in "procedural fencing, or forum-shopping." *Swish*, 669 F. Supp. 2d at 78. "The Declaratory Judgment Act is not a tactical device." *Gov't Emples. Ins. Co. v. Rivas,* 573 F. Supp. 2d 12, 15 (D.D.C. 2008). Thus, in examining whether to resolve a declaratory judgment action, "courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Swish*, 669 F. Supp. 2d at 78 (citation omitted). Here, Plaintiffs' motives are even more apparent. Plaintiffs filed this action the day after they were served with the complaint in the Virginia action. *See* Ex. D.

In the Virginia action, Defendants seek fees earned as a result of work performed in relation to the Novak litigation. While it is unclear what Count III asks of the Court, at most it is asking the Court to determine that Defendants are entitled to something less than what they seek. *See* Compl. ¶ 48. Therefore, to the extent that the Court finds that Count III properly pleads a claim for declaratory relief, it asserts what is essentially an affirmative defense to the claims brought in the Virginia action. The fact that granting declaratory relief would require the resolution of an affirmative defense weighs against exercising jurisdiction. *See Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 79 (D.D.C. 2009) (citing *BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995) ("It is our view that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its

otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue.")).

### iii. Whether other remedies are available or other proceedings pending.

Whether Defendants' are entitled to the fees they seek will undoubtedly be at issue in the Virginia action. In the Virginia action, Plaintiffs Regan and RZL will be able to raise the same arguments that Plaintiffs have allegedly pursued in Count III. *See Swish Mktg., Inc.*, 669 F. Supp. 2d at 79 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2009) ("Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified.")). As such, a much more appropriate forum exists and the Court should abstain from exercising its jurisdiction.

### iv. The degree of adverseness between the parties.

The adverseness between the parties cannot be disputed. Defendants have filed suit in Virginia against Plaintiffs Regan and RZL. *See* Ex. B. In response, Plaintiffs Regan and RZL, along with Plaintiff Novak, filed this action. *See* Compl. ¶¶ 30-31. As was discussed above, the fact that Plaintiffs RZL and Regan act as counsel for Plaintiff Novak in the instant action assures that their interest are aligned with regard to the Virginia action. Therefore, the Plaintiffs' interests are aligned and are all directly adverse to Defendants in both actions. This adverseness weighs in favor of the exercise of discretion. *See Swish Mktg., Inc.*, 669 F. Supp. 2d at 80.

### v. The equity of the conduct of the declaratory judgment plaintiff.

In the Virginia action, Defendants seek several hundred thousand dollars in attorney's fees. *See* Ex. B. However, in response to this fee dispute, Plaintiffs Regan and RZL have placed

only $69,000 in escrow.  *See* Ex. C.  Further, Plaintiffs filed this action the day after they were served with the complaint in the Virginia action.  *See* Ex. B.  While this could be mere coincidence, it is unlikely, especially when one considers that Plaintiffs' Complaint expressly states that the filing of the Virginia action constituted a breach.  Compl. ¶ 30-31.  It is, therefore, obvious that Plaintiffs have filed this lawsuit merely to gain a tactical advantage.

### vi.  The state of the record.

Both this action and the Virginia action are in the early stages of litigation and have conducted limited discovery.  Neither party would be prejudiced if the Court chose not to exercise jurisdiction over Count III.  As such, the relevant factors overwhelmingly weigh in favor of abstention.

## VII.  <u>Conclusion</u>

Plaintiffs fail to allege that they have suffered some actual harm, therefore, Plaintiffs lack Article III standing to bring Counts I and II and they should be dismissed.  Further, all of Plaintiffs' claims are contingent upon issues that may be resolved in the first filed Virginia action and are, therefore, unripe and not justiciable at this time.  As such, the Court should dismiss this action in favor of the parallel Virginia action.  Alternatively, to the extent this Court finds that it has jurisdiction over any of Plaintiffs' claims, this Court should abstain from exercising that jurisdiction.

WHEREFORE, for the reasons set forth in this Memorandum of Points and Authorities, Defendants Douglas A. Lines, P.C. and Douglas A. Lines, Esq. respectfully request that this Court dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, or in the alternative abstain from exercising its jurisdiction over Plaintiffs' claims in favor of the parallel Virginia action.

Respectfully submitted,

ECCLESTON & WOLF, PC

**/s/ Justin M. Flint**
_____
Aaron L. Handleman (#48728)
Justin M. Flint (#491782)
Christopher F. Copenhaver (*pro hac vice*)
1629 K Street, NW
Suite 260
Washington, DC 20006
Tel: (202) 857-1696
Fax: (202) 867-0762
handleman@ewdc.com
flint@ewdc.com
copenhaver@ewdc.com
*Counsel for Defendants*

EXHIBIT A

VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD

DOUGLAS A. LINES, P.C.                          )
                                                )
and                                             )
                                                )
DOUGLAS A. LINES,                               )
                                                )
          Plaintiffs                            )
                                                )
v.                                              )     No. _____
                                                )
PATRICK M. REGAN                                )
REGAN ZAMBRI & LONG, P.L.L.C.                   )
E. WAYNE POWELL                                 )
POWELL & PARRISH, P.C.                          )
                                                )
and                                             )
                                                )
JONATHAN HALPERIN                               )
                                                )
          Defendants                            )

## COMPLAINT

Douglas A. Lines, P.C. ("Lines") and Douglas A. Lines, by counsel, as and for their

complaint against all Defendants , respectfully represent:

Parties

1.      Lines is a Virginia professional corporation licensed to practice law in the

Commonwealth of Virginia and has its principal place of business at 3107 Skipwith Road in

Henrico County. Lines is the successor to the sole proprietorship of Douglas A. Lines, Esq., co-

plaintiff herein and an attorney licensed to practice law in the Commonwealth. Douglas A Lines,

Esq., as does Lines, transacted business in, among other places, the County of Chesterfield at

W. R. Baldwin, III (VSB #16988)
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA 23226
(804) 285-3888 (voice)
(804) 285-7779 (fax)
Counsel for the Plaintiffs

EXHIBIT B

VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD

DOUGLAS A. LINES, P.C.            )
                                  )
and                               )
                                  )
DOUGLAS A. LINES,                 )
                                  )
           Plaintiffs             )
                                  )
v.                                )    No. ___041CL10002380-00___
                                  )
PATRICK M. REGAN                  )
REGAN ZAMBRI & LONG, P.L.L.C.     )
E. WAYNE POWELL                   )
POWELL & PARRISH, P.C.            )
                                  )
and                               )
                                  )
JONATHAN HALPERIN                 )
                                  )
           Defendants             )

## COMPLAINT

Douglas A. Lines, P.C. ("Lines") and Douglas A. Lines, by counsel, as and for their complaint against all Defendants , respectfully represent:

Parties

I.     Lines is a Virginia professional corporation licensed to practice law in the Commonwealth of Virginia and has its principal place of business at 3107 Skipwith Road in Henrico County. Lines is the successor to the sole proprietorship of Douglas A. Lines, Esq., co-plaintiff herein and an attorney licensed to practice law in the Commonwealth. Douglas A Lines, Esq., as does Lines, transacted business in, among other places, the County of Chesterfield at

W. R. Baldwin, III (VSB #16988)
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA 23226
(804) 285-3888 (voice)
(804) 285-7779 (fax)
Counsel for the Plaintiffs

times material to this cause.

2.    Defendant Patrick M. Regan ("Regan"), is an attorney licensed to practice in the Commonwealth of Virginia, in the District of Columbia and in Maryland. He is a member of the law firm Regan, Zambri & Long, PLLC. His practice of law includes regularly transacting business in Virginia.

3.    Regan, Zambri & Long, P.L.L.C. ("RZL") is a law firm organized and existing under the laws of Washington, DC having its principal place of business in Washington, DC. Its practice of law "is dedicated to aggressively representing injured victims in the District of Columbia, Maryland and Virginia" and it regularly transacts business in Virginia. RZL is the successor to Regan, Halperin & Long, P.L.L.C..

4.    Defendant E. Wayne Powell ("Powell"), is a Virginia resident, an attorney licensed to practice law in the Commonwealth of Virginia and the District of Columbia and, according to the records of the Virginia State Corporation Commission published to the World Wide Web, is president of Defendant Powell & Parrish, P.C. His principal place of business is in Chesterfield County and he regularly transacts business there.

5.    Defendant, Powell & Parrish, P.C. ("Powell, P.C.") is a professional law corporation organized under the laws of Virginia having its principal place of business in Chesterfield County, Virginia and it regularly transacts business there.

6.    Jonathan Halperin, upon information and belief, is a former member of the firm Regan, Halperin & Long, P.L.L.C. n/k/a RZL and he resides in Virginia.

Venue and Jurisdiction

7.    Personal jurisdiction as to defendants Regan and RZL is founded under Va. Code § 8.01-328.1A. in that, by way of illustration and not limitation, the cause of action herein arises

2

a.    from these defendants transacting business in the Commonwealth,

b.    contracting to supply services and things in the Commonwealth,

c.    causing tortious injury in the Commonwealth by an act or omission outside this Commonwealth when they regularly do or solicit business, engage in other persistent courses of conduct and derive substantial revenue from services rendered in the Commonwealth.

8.    Venue is proper in this Court pursuant to Va. Code § 8.01-262(1), (2), (3) and (4) as defendants Powell and Powell and Powell & Parrish, PC are Virginia residents who reside and conduct substantial activity transact business in Chesterfield County and have their principal place of business in Chesterfield County there.

Facts

9.    In or about December of 2000, defendant Powell solicited Lines to associate with Powell in the representation two individuals, namely one Dominic Novak and one George D. Valdivia, for injuries suffered by them as a result of criminal activity outside a Washington DC nightclub.

10.    Powell represented to Lines that he held actual authority to retain additional counsel to assist in the prosecution of the case and on January 7, 2001 he confirmed the terms of an oral agreement between him and Lines per the attached Exhibit A, under which Powell agreed Lines would be entitled to compensation in the amount of one-third of the total attorney fees recovered in the Novak and Valdivia matters. A true copy of the retainer agreement between Powell and client Dominic Novak as referenced in Exhibit A, such being a contingent fee agreement, is attached as Exhibit B.

11.    Powell filed suit on behalf of client Novak in the United States District Court for the District of Columbia, case no. 1:01-cv-00039 on January 8, 2001; he filed suit on behalf of

3

client Valdivia in the United States District Court for the District of Columbia, case no. 1:01-cv-00456, on February 28, 2001.

12.    Lines performed legal work pursuant to his association by Powell with respect to both the Novak and Valdivia cases; this work included researching potential defendants, evaluating and researching potential causes of actions, development of pleadings and arguments to substantiate claims, evaluation of the applicable statutes of limitations and preparation of virtually all the court filings and submission of same to Powell prior to June, 2002. Services rendered additionally included numerous trips to the District of Columbia for appearance at criminal proceedings involving persons related to the criminal acts that victimized Novak and Valdivia, attendance with Powell at hearings in the Novak and Valdivia cases and attendance with Powell at multiple depositions.

13.    In the Spring of 2002, Lines suggested and Powell agreed that it would be beneficial to associate an attorney with an office in the District of Columbia to assist in the cases. Powell authorized Lines to seek and interview potential counsel in the District of Columbia. Lines determined that the firm of RZL would be a potentially beneficial firm to associate in the prosecution of the two cases and on or about March 21, 2002, Lines spoke with and emailed Regan in connection therewith. Regan suggested that his then partner Halperin be the principal attorney associated from RZL to assist in the case. Lines and Powell met with Halperin on or about May 10, 2002, and determined that he would be an appropriate attorney to associate in the prosecution of the two cases.

14.    Powell and Lines had a dinner meeting on or about May 20, 2002 at Morton's Steak House at 1050 Connecticut Ave., Washington, DC with client Novak and his wife. At this dinner Douglas Lines discussed with Novak associating RZL and Halperin as counsel and the

4

proposed change in the fee structure for the case, specifically increasing the contingent fee from one-third to forty per cent of the gross recovery, to all of which Novak agreed. Novak additionally stated that he was indifferent to any allocation of fees so long as his fees did not increase beyond the forty per cent contingency.

15.     Because of the association of RZL and Halperin, client Valdivia also agreed that the percentage contingent fee in the cases would be increased to forty per cent of the gross recovery from thirty three per cent and approved the association of RZL and Halperin.

16.     In June, 2002, Lines, Powell and Halperin held a telephone conference to discuss the modification of legal fee agreements among the attorneys for the two cases in light of the entry of Halperin and his firm into these cases and the increase in contingent fee as agreed by Novak and Valdivia. In this conference call Lines offered to reduce his role for the duration for the cases and as a result to reduce his fee from his original contracted rate to 5% of the gross recovery, a reduction of more than fifty per cent. Both Halperin and Powell agreed and accepted these terms in the same phone conversation and thereafter the agreement was memorialized in a writing signed by Lines and Powell on June 23, 2002, per Exhibit C.

17.     On June 21, 2002, Halperin entered his appearance as counsel of record in client Novak's case; Halperin entered his appearance in client Valdivia's case July 10, 2002.

18.     Although his role was reduced, Lines continued to assist in the prosecution of the cases. By way of illustration, during a phone call between Halperin and Lines on or about January 31, 2003 Halperin expressed concern to Lines over facts relating to the location of the assault and the assault itself. Lines, based on his work, suggested contact with a witness to the attack, one Frank West, and interviewed West at Halperin's request.

19.     Prior to the entry of appearance by Halperin in client Novak's case, Lines drafted

5

and forwarded to Powell for his signature virtually all the pleadings and Lines arranged for the filing of such pleadings. Prior to the entry of appearance by Halperin in client Valdivia's case, Lines likewise drafted and forwarded to Powell for his signature virtually all the pleadings and Lines arranged for the filing of such pleadings.

20. In 2003 Halperin and Powell attempted to amend the fee sharing agreement attached as Exhibit C. To that end on May 28, 2003 Powell wrote Lines the letter attached as Exhibit D, proposing that Lines' fee be capped at $75,000 each for the Novak and the Valdivia cases. Lines rejected this proposed amendment.

21. Following Lines' rejection of the agreement proposed in Exhibit D, by letter dated January 23, 2004, complete with retainer agreements signed by the clients, RZL by Halperin and Powell PC by Powell, Powell wrote Lines (true copy at Exhibit E), requesting again that Lines agree to an amended fee division as set out therein. Lines rejected this proposed amendment.

22. In late spring 2007 Valdivia settled his case for payment of $10,000. Lines was paid nothing by RZL or Powell, nor was Lines reimbursed his costs advanced, including but not limited to the filing fee.

23. Novak tried his case to a jury, which on May 24, 2007 returned a verdict in his favor for $4,111,772.00. On May 29, 2007 the United States District Court for the District of Columbia entered judgment in favor of Novak for $4,111,772.00 and on August 1, 2007 entered judgment in favor of Novak for $30,710.00 in fees and costs related to the case.

24. The judgment of the district court in favor of Novak was affirmed on appeal, and satisfaction of the judgment was entered by the United States District Court for the District of Columbia on August 24, 2009. Upon information and belief, the sum of not less than

6

$4,142,482.00 was paid in such satisfaction. In addition, interest accruing on the judgment was paid. Lines was paid nothing.

25.     Upon information and belief RZL received the payments that satisfied the judgment in favor of Novak.

26.     Regan and RZL decided not to make any payment to Lines even though Lines had made numerous demands for payment.

27.     Powell and Powell PC aided and abetted, and agreed with and ratified, the decision of RZL and Regan not to make any payment to Lines.

28.     At all times material hereto Regan and Halperin acted within the scope of their employment for RZL and RZL ratified all of their actions.

29.     At all times material hereto Powell acted within the scope of his employment for Powell PC and Powell PC ratified all of his actions.

30.     Douglas A. Lines, Esq. to the extent permitted by law has assigned any and all individual rights of recovery held by him to Lines.

31.     Douglas A. Lines, Esq. and Lines performed their contract with Powell PC and RZL and with Novak and Valdivia in all material aspects and are entitled to payment therefor.

## COUNT I
### (Breach of Contract)

32.     The allegations of paragraphs 1-31 are incorporated by reference.

33.     Per the terms of Exhibit C, Lines was and is entitled to be paid 5% of the gross recovery in the Novak and Valdivia cases, such gross recovery being an amount not less than $4,152,482.00; payment to Lines therefore is due in a sum of not less than $207,624.10.

34.     Powell PC and RZL breached their contract with Lines by not making payment of

7

this or any amount to Lines and caused Lines damages thereby in the sum of not less than $207,624.10.

## COUNT II
### (Alternative Breach of Contract)

35.    The allegations of paragraphs 1-31 are incorporated by reference.

36.    Pleading in the alternative, if the agreement attached as Exhibit C is for any reason ineffective, then the terms of Exhibit A remain in full force and effect.

37.    Per the terms of Exhibit A, Lines was and is entitled to be paid one-third of one-third of the gross recovery in the Novak and Valdivia cases, such gross recovery being an amount not less than $4,152,482.00; payment to Lines therefore is due in a sum of not less than $461,386.88.

38.    Powell PC and RZL breached their contract with Lines by not making payment of this or any amount to Lines and caused Lines damages thereby in the sum of not less than $461,386.88.

## COUNT III
### (Breach of Trust)

39.    The allegations of paragraphs 1-31 are incorporated by reference.

40.    The settlement funds as to client Valdivia and the funds to satisfy the judgment of client Novak came into the hands of Regan and RZL.

41.    Such funds, being funds of the client and of third persons (Lines), RZL and Regan were required to hold these funds under Rules of Professional Conduct for the District of Columbia in an account separate from accounts holding the attorney's or the law firm's funds.

42.    Under the Rules of Professional Conduct for the District of Columbia, Regan and RZL, upon receiving the settlement funds as to client Valdivia and the funds to satisfy the

8

judgment of client Novak, were required to notify Lines promptly. They did not.

43.    Regan, RZL, Powell and Powell PC all knew of Lines' claim to a portion of the

attorneys' fees included in the settlement funds as to client Valdivia and the funds to satisfy the

judgment in favor of client Novak.

44.    Under the law of the District of Columbia, Regan and RZL, having custody of

funds as to which Lines, Regan, RZL, Powell and Powell PC held claims, Regan and RZL were

required to keep such attorneys' fees separate until the dispute regarding same was resolved. By

way of illustration, District of Columbia Rule of Professional Conduct 1.15 provides in pertinent

part the procedure that Regan and RZL were obligated to follow. Regan and RZL, having

custody of funds:

> in which interests are claimed by the lawyer and another person, or
> by two or more persons to each of whom the lawyer may have an
> obligation, the property shall be kept separate by the lawyer until
> there is an accounting and severance of interests in the property. If
> a dispute arises concerning the respective interests among persons
> claiming an interest in such property, the undisputed portion shall
> be distributed and the portion in dispute shall be kept separate by
> the lawyer until the dispute is resolved. Any funds in dispute shall
> be deposited in a separate account . . . .

45.    Virginia Rule of Professional Conduct 1:15 (b) is substantially the same:

> When in the course of representation a lawyer is in possession of
> property in which both the lawyer and another person claim
> interests, the property shall be kept separate by the lawyer until
> there is an accounting and severance of their interests. If a dispute
> arises concerning their respective interests, the portion in dispute
> shall be kept separate by the lawyer until the dispute is resolved.

46.    Upon information and belief, Regan and RZL breached this duty as to Lines and

did not and have not retained the "portion in dispute" with Lines separate until the dispute was

resolved; instead, in contravention of the District of Columbia Rules of Professional Conduct,

upon information and belief Regan and RZL have disbursed finally and fully all settlement funds received as to client Valdivia and the funds received to satisfy the judgment in favor of client Novak.

47.     Upon information and belief, Powell and Powell PC received funds from Regan and RZL knowing such funds were in dispute with Lines, but Powell and Powell PC likewise breached their duty as to Lines and did not and did not retain the "portion in dispute" with Lines separate until the dispute was resolved as required by the Virginia Rules of Professional Conduct.

48.     Regan, RZL, Powell and Powell PC as trustees owed Lines a duty with respect to Lines' funds, Lines being the beneficiary of such duty; Regan, RZL, Powell and Powell PC further owed Lines a duty if there was any dispute with respect thereto to hold such funds in trust pending resolution of that dispute.

49.     Regan, RZL, Powell and Powell PC breached this duty and caused Lines damages thereby.

## COUNT IV
### (Punitive Damages for Breach of Trust)

50.     The allegations of paragraphs 1-31 and 40-49 are incorporated by reference.

51.     The actions of Regan, RZL, Powell and Powell PC with respect to their breaches of the cited duties under the District of Columbia (Regan and RZL and Powell) and Virginia (Regan, Powell and Powell PC) Rules of Professional Conduct were taken in conscious and reckless disregard of their duties and of the rights of Lines, and were willful and malicious.

52.     An award of punitive damages against Regan, RZL, Powell and Powell PC therefore is appropriate.

10

COUNT V
(Conversion)

53.     The allegations of paragraphs 1-31 and 40-49 are incorporated by reference.

54.     Regan and RZL and Powell and Powell PC in so acting unlawfully exercised ownership, dominion and control over the personal property of Lines in and to Lines' portion of the attorneys' fees, all in denial and repudiation of Lines' rights thereto.

55.     These actions constituted a conversion of Lines' personal property, to-wit: Lines' share of the attorneys fees from the gross recoveries in the Novak and Valdivia cases, and caused him damages.

COUNT VI
(Punitive Damages for Conversion)

56.     The allegations of paragraphs 1-31 and 40-49 and 54-55 are incorporated by reference.

57.     The actions of Regan, RZL, Powell and Powell PC with respect to their conversion of Lines' personal property were taken in conscious and reckless disregard of their duties and of the rights of Lines, and were willful and malicious.

COUNT VII
(Conspiracy to Injure Another in Trade or Business)

58.     The allegations of paragraphs 1-38, 40-49 and 54-55 are incorporated by reference.

59.     Regan and RZL on the one hand, and Powell and Powell PC on the other, did combine, associate, agree, mutually undertake and concert together for the purpose of willfully and maliciously injuring Lines in his and its reputation, trade, business or profession by, *inter alia*, breaching their trust duties to Lines imposed under the District of Columbia and Virginia

11

Rules of Professional Conduct and by converting Lines' personal property.

60.     Regan and RZL on the one hand, and Powell and Powell PC on the other, also did combine, associate, agree, mutually undertake and concert together for the purpose of willfully and maliciously compelling Lines' to do or perform any act against its and his will, including but not limited to executing the proposed retainer agreement included in Exhibit E and preventing or hindering Lines from doing or performing a lawful act, to-wit, including but not limited to recovering attorneys' fees properly due.

61.     In furtherance of said conspiracy, Halperin drafted the proposed amended retainer agreement included in Exhibit D and he and Powell did cause the retainer agreement included in Exhibit E to be executed by RZL, Halperin, Powell and Powell PC; and Powell sent Exhibits D and E to Lines.

62.     These actions all were taken with malice and Regan, Halperin and RZL on the one hand, and Powell and Powell PC on the other, all acted intentionally, purposefully, and without lawful justification with respect to Lines.

63.     The actions of Regan, Halperin and RZL on the one hand, and Powell and Powell PC on the other, caused Lines to suffer damages in the amounts alleged herein.

## Count VIII
### (Quantum Meruit)

64.     The allegations of paragraphs 1-31 are incorporated by reference.

65.     Pleading in the alternative, if and to the extent it is determined there was and is no express contract between or among Lines, Powell PC and/or RZL, Lines is entitled to an award of the quantum meruit against them in order to avoid the unjust enrichment that otherwise would accrue to Powell PC and/or RZL.

12

WHEREFORE, premises considered, Douglas A. Lines, P.C. and Douglas A. Lines, by counsel, pray for relief as follows:

      a.     Under Count I, that they recover judgment against Powell PC and RZL in the sum of not less than $207,624.10, with prejudgment interest thereon at the rate of 6% commencing August 24, 2009,

      b.     Under Count II, that they recover judgment against Powell PC and RZL in the sum of not less than $461,386.88, with prejudgment interest thereon at the rate of 6% commencing August 24, 2009,

      c.     Under Count III, that that they recover judgment against Regan, RZL, Powell and Powell PC in the sum of not less than $461,386.88, or such other amount as is justified by the evidence, with prejudgment interest thereon at the rate of 6% commencing August 24, 2009,

      d.     Under Counts IV and VI, that they recover punitive damages against Regan, RZL, Powell and Powell PC in the sum of $350,000,

      e.     Under Count V, that they recover judgment against Regan, RZL, Powell and Powell PC in the sum of not less than $461,386.88, or such other amount as is justified by the evidence, with prejudgment interest thereon at the rate of 6% commencing August 24, 2009,

      f.     Under Count VII, that they recover damages against all defendants herein in the sum of not less than $461,386.88, or such other amount as is justified by the evidence, that such amount be trebled for a total of $1,384,160.66, and that such sum also include prejudgment interest at the rate of 6% thereon commencing not later than August 24, 2009.

      g.     Under Count VIII, that they receive the quantum meruit for his and its

services, such being in the amount of not less than $461,386.88, or such other amount as is justified by the evidence, with interest thereon at the rate of 6% commencing August 24, 2009,

        h.      That they recover their reasonable attorney's fees as provided under Va. Code § 18.2-500 and under such other bases as may be justified by the evidence,

        i.      That they have such other relief as is proper, to include the recovery of their court costs incurred herein.

DOUGLAS A. LINES, P.C.
DOUGLAS A. LINES

By: _____
                Of Counsel

W. R. Baldwin, III (VSB #16988)
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA 23226
(804) 285-3888 (voice)
(804) 285-7779 (fax)
Counsel for the Plaintiffs

14

# Exhibit A

Association Agreement on Novak v. Zei Club, et al.

I, E. Wayne Powell, do hereby associate the Law Offices of Douglas A. Lines to work on Dominic Novak v. Zei Club, et al. case. I hereby agree that Douglas A. Lines, Esq. shall receive one-third (1/3) of the total attorney fees recovered plus all expenses he incurs in this case. Additionally, the client has been informed and agrees to this association.

*The expenses will be reimbursed in accordance with paragraph 3 of the Retainer Agreement entered into between Dominic Novak and B. Wayne Powell and must be determined to be reimbursed with receipts*

_____                    _____1/7/01_____
E. Wayne Powell                                 Date

# Exhibit B

## RETAINER AGREEMENT

I, the undersigned client, _Dominic Novak_, do hereby retain and employ the law firm of POWELL & ASSOCIATES, P.C. as attorney to prosecute and settle a claim for damages against _CAPITAL MANAGEMENT_ or any other person, firm or corporation liable therefore, for damages sustained on or about the _____, It is understood that POWELL & ASSOCIATES has associated the LAW OFFICES OF DOUGLAS A. LINES (Amy Shelar) however it is also understood that this association will in no way affect the provisions of the agreement set forth below.

1.    I agree to pay you an attorney's fee for services a sum equal to one-third (1/3) of the amount recovered in the case whether by settlement or actual litigation in court; and in the event of a structured settlement, one-third (1/3) of the present value.

2.    In the event an appeal is taken from the trial court by either side, or if a garnishment or any proceeding after the judgment has to be brought to collect any part of the judgment, then I agree to pay you forty-five percent (45%) of the gross amount received or at your option, reasonable compensation for all work done should this occur.

3.    I understand that attorney's may not ethically pay the costs of investigation and litigation and that I a responsible for such costs including medical reports, photographs, copying, police reports, sheriff's fees, court costs, fees of physicians and expert witness fees. I authorize you to advance such expenses, as your firm deems necessary, and I agree to repay these expenses.

4.    In the event that I discharge you before any settlement is accepted or an award is obtained, you are entitled to reasonable compensation for all work done in preparation of my claim. The reasonable rate we agree is $175.00 an hour for a partner and $125.00 an hour for an associates.

5.    I understand that if after investigation by you it is your opinion that further pursuit of the claim or suit is not advisable, then I shall be free to retain other counsel and my sole obligation to your firm will be for costs advanced.

It is further understood in the event that you do not make a recovery, I am in no way obligated to you for attorney's fees and that no settlement or compromise of my claim will be made without my approval.

Dated this __Jan__ day of __01/06/_____, 20 01.

CLIENT:

_Dominic Novak_

The above agreement is hereby accepted upon the terms stated above.

POWELL & ASSOCIATES, P.C

BY: _____

E. Wayne Powell
(Alyson Rossi Legal Asst)(Christian A. Powell Esq)

# Exhibit C

LAW OFFICES OF

## DOUGLAS A. LINES, PC

POST OFFICE BOX 8048
RICHMOND, VIRGINIA 23223-8048

DOUGLAS A. LINES*
AMY Y. SHELAR

*ADMITTED IN VIRGINIA
AND FLORIDA

(804) 644-1796
FAX (804) 644-2607
e-mail: LinesEsq@aol.com

<u>STREET ADDRESS</u>
2515 East Broad Street, #2
Richmond, Virginia 23223

June 23, 2002

MEMO
To: EWP
From: DAL
Re: Attorney association

RE: <u>Dominic Novak v. Capital Management and Development Corp. et al.</u>
<u>George Valdivia v. Capital Management and Development Corp. et al.</u>
US District Court to the District of Columbia, 01CV39/01CV456

Wayne:

As discussed, the clients in the above referenced matters have agreed to an increase in attorneys' fees in their respective Zei Club, et al cases from 33.333% to 40 % of the gross recovery. Additionally, it is agreed that Jonathan Halperin will be associated in these matters. With the addition of Jonathan Halperin, our agreement is hereby amended and as my role in handling ongoing litigation matters will be diminished, we have agreed that I will now receive attorneys' fees in the amount of 5% of the gross recovery for each case as well as reimbursement of out of pocket expenses. Expenses shall be reimbursed in accordance with the terms of the retainer agreements with the clients and documentation of expenses shall be provided upon request. It is also agreed that if no recovery is obtained, neither Wayne Powell nor his firm shall be responsible for any expenses or fees to Douglas A. Lines or his firm. If I have accurately represented our arrangement, please sign below. Thanks.

_____
E. Wayne Powell

_____
Douglas A. Lines

# Exhibit D

## POWELL & ASSOCIATES
### A PROFESSIONAL CORPORATION
1915 HUGUENOT ROAD, SUITE 203
RICHMOND, VIRGINIA 23235-4315

E. WAYNE POWELL *
ewplaw@aol.com

(804) 794-4050
FAX (804) 794-6576

CHRISTIAN A. PARRISH
caparrishlaw@aol.com

Fluent in *Spanish and *French
* VA and District of Columbia

1-800-996-6503
www.powellandassociateslaw.com

May 28, 2003

**Via Facsimile**
Douglas A. Lines, Esq
Law Offices of Douglas A. Lines, PC

RE: Novak v. Zei Club Inc

Dear Doug:

    I attach a copy of an agreement that Jonathan had drafted which would be a comprehensive agreement to include our portion and yours. Jonathan and I have discussed this in detail, and we have discussed it with Dominic. Dominic is very anxious to have the case tried, and after some intense argument before the court, we finally have a court date next February 9th, 2004.

    As you know, we have engaged in some extensive discovery since Jonathan's involvement began last year, and we have discussed the legal hurdles which remain before we can get this case to the jury. Notwithstanding the mandated mediation which will take place between September and November, we both expect this case to go to trial to verdict. We also spoke previously increasing the percentage of the attorney fee to 40%. I have been negotiating this again with Dominic as well as the proportionality of the shares. Jonathan has strong feelings on this issue, especially since he and his firm have borne the majority (about $40,000 of the $60,000 to date) of the case expenses. It is likely this amount could go as high as $100,000. That is what led to the fee split which is contained in the agreement attached to this letter.

    Though you realize how much all of us value your contributions in a crucial part of the case when the case was filed and researching some of the legal issues, we decided that a cap was appropriate since we have unilaterally undertaken the lion's share of the litigation, and will carry the rest of the case to conclusion. Although I can only approximate the number of hours you and Amy spent assisting me, particularly during my mobilization, we felt that a cap of $75,000 would be an appropriate remuneration under the circumstances. Obviously, if the case does not go well, and notwithstanding the obligation on the part of Dominic to pay the costs of the case, we all know the realities of his and Carey's income, so it is likely that Jonathan and I will suffer the consequences. In any case, give me a call this afternoon, so that I can communicate to Jonathan and Dominic your input. You won't have to worry about any other obligation in the case and I will keep you apprized of developments as they occur.

With high regards,

E. Wayne Powell

## JOINT RETAINER AGREEMENT

### I.    Purpose of This Agreement

I, Dominic Novak, hire E. Wayne Powell, Esquire of Powell & Associates, P.C. ("P&A"), Jonathan Halperin, Esquire of Regan, Halperin & Long, PLLC ("RHL"), and Douglas Lines, Esquire of the Law Offices of Douglas Lines, P.C. ("DL") to represent me in my claims against Capital Management and Development, Inc., SJG Properties, Zei, Inc., Ricky Waller, Michael Braxton, and the individual criminal defendants. When used in this Agreement, "my lawyers" means RHL, P&A, and DL.

### II.    My Responsibility to Pay Lawyers' Fees

#### A.  Lawyers' Fees If There is No Appeal

I agree to pay my lawyers forty percent (40%) of the total recovery whether this recovery is obtained by settlement or by judgment after a trial. In no event will the fee I pay for legal services in handling my case ever fall below that amount which is equivalent to forty percent (40%) of the total recovery as defined below.

#### B.  Lawyers' Fees If There is an Appeal

If there is an appeal of a judgment, I agree to pay my lawyers for their service forty percent (40%) of the total recovery, regardless of whether this recovery is obtained by settlement after the appeal has been filed or by way of a ruling by the higher court.

#### C.  Definition of Total Recovery

The total recovery is the total amount recovered by the settlement or judgment including any amount recovered as compensatory damages, punitive damages and interest. There is nothing to be subtracted in determining total recovery.

#### D.  Settlement Payments Over a Period of Time.

In the event my case is settled by an agreement which calls for an initial cash payment and additional payments over a period of time, my lawyers may decide to either:

1)    Be paid all of their fees from the initial cash payment based upon the present value of all payments ("present value" means the total cost to the defendant of all settlement payments, present or future, as if they were all made on the date of settlement); or

2)    Be paid their fees, of forty percent (40%) out of each payment as it is received.

### E. Lawyers' Fees Are Not Set By Law

My lawyers' fees are not set by law. I have agreed to pay these lawyers' fees after I discussed them with my lawyers.

### III.   My Responsibility to Pay Expenses

My lawyers must pay expenses to handle my case. It is difficult for my lawyers to accurately predict the amount and type of expenses they will have to pay to handle my case. Some of these expenses are court filing fees, court reporter fees, traveling and lodging expenses, consultant fees, expert witness fees, computer service fees, charges for telephone, postage and photocopying, and charges for the preparation of trial exhibits.

To date, my lawyers have already expended over $30,000.00 in the prosecution of my claims for depositions, discovery and experts. I permit my lawyers to continue to pay the expenses they decide are appropriate to handle my case. I agree to reimburse my lawyers for these expenses at the conclusion of the case.

My lawyers cannot guarantee a recovery.

### IV.   My Right to Approve A Settlement

My case cannot be settled without my approval.

### V.   Lawyers Sharing Responsibility and Fees

#### A. Division of Responsibility

My lawyers agree to share responsibility equally for the handling of my case as defined herein. I approve that my lawyers will share this responsibility.

#### B. Division of Fees

In the event my lawyers obtain a recovery for me, my lawyers agree to divide the lawyers' fees as follows:

RHL will receive 43.75% of the recovery discussed in Section II.A of this Agreement, P&A will receive 43.75% of the recovery discussed in Section II.A of this Agreement, and DL will receive 12.5% of the recovery discussed in Section II.A of this Agreement, up to a maximum of $75,000.00. Any amount above that shall be shared equally between RHL and P&A.

I approve the division of my lawyers' fees.

VI.   **What This Agreement Covers**

This agreement states the entire agreement among me, P&A, RHL and DL. This Agreement is to be interpreted in accordance with District of Columbia law. The terms of this Agreement may only be changed by a separate written agreement signed and dated by me and my lawyers.

We have read this Agreement and agree to all of its terms.

_____        _____
Dominic Novak                                             Date


_____        _____
E. Wayne Powell                                          Date
Powell & Associates, P.C.


_____        _____
Jonathan E. Halperin                                    Date
Regan, Halperin & Long, P.L.L.C.


_____        _____
Doug A. Lines                                            Date
Law Offices of Douglas A. Lines, P.C.

# Exhibit E

## POWELL & ASSOCIATES
### A PROFESSIONAL CORPORATION
1915 HUGUENOT ROAD, SUITE 203
RICHMOND, VIRGINIA 23235-4315

E. WAYNE POWELL * + ^
wpowell@powellassoc.com

Fluent in +Spanish and ^French

* VA and District of Columbia

(804) 794-4030
FAX (804) 794-6576

1-800-996-6503

www.powellandassociateslaw.com

CHRISTIAN A. PARRISH
cparrish@powellassoc.com

Of Counsel

JULIE A. CURRIN

January 23, 2004

**Via U.S. Mail**
Douglas Lines, Esq.
P.O. Box 8048
Richmond, VA 23223-8048

Re:     Novak v. Capital Management & Development Corp, et al.

Dear Doug:

We hope everything is well with you and Amy as well. Sorry I missed your annual party, I was out of town at the time. I enclose copies of the two fee agreements.

It appears that the January 30, 2004 pre-trial conference will continue the case. Obviously, the clients are unhappy but the Judge is engaged in a major drug trial for several months.

If you have any questions, please contact my office.

With high regards,

E. Wayne Powell, Esq.

EWP/mnp
Attachments

## JOINT RETAINER AGREEMENT

### I.    Purpose of This Agreement

I, George Valdivia, hire E. Wayne Powell, Esquire of Powell & Associates, P.C. ("P&A"), Jonathan Halperin, Esquire of Regan, Halperin & Long, PLLC ("RHL"), and Douglas Lines, Esquire of the Law Offices of Douglas Lines, P.C. ("DL") to represent me in my claims against Capital Management and Development, Inc., SJG Properties, Zei, Inc., Ricky Waller, Michael Braxton, and the individual criminal defendants. When used in this Agreement, "my lawyers" means RHL, P&A, and DL.

### II.    My Responsibility to Pay Lawyers' Fees

#### A.  Lawyers' Fees If There is No Appeal

I agree to pay my lawyers forty percent (40%) of the total recovery whether this recovery is obtained by settlement or by judgment after a trial. In no event will the fee I pay for legal services in handling my case ever fall below that amount which is equivalent to forty percent (40%) of the total recovery as defined below.

#### B.  Lawyers' Fees If There is an Appeal

If there is an appeal of a judgment, I agree to pay my lawyers for their service forty percent (40%) of the total recovery, regardless of whether this recovery is obtained by settlement after the appeal has been filed or by way of a ruling by the higher court.

#### C.  Definition of Total Recovery

The total recovery is the total amount recovered by the settlement or judgment including any amount recovered as compensatory damages, punitive damages and interest. There is nothing to be subtracted in determining total recovery.

#### D.  Settlement Payments Over a Period of Time.

In the event my case is settled by an agreement which calls for an initial cash payment and additional payments over a period of time, my lawyers may decide to either:

1)   Be paid all of their fees from the initial cash payment based upon the present value of all payments ("present value" means the total cost to the defendant of all settlement payments, present or future, as if they were all made on the date of settlement); or

2)   Be paid their fees, of forty percent (40%) out of each payment as it is received.

### E. Lawyers' Fees Are Not Set By Law

My lawyers' fees are not set by law. I have agreed to pay these lawyers' fees after I discussed them with my lawyers.

### III.    My Responsibility to Pay Expenses

My lawyers must pay expenses to handle my case. It is difficult for my lawyers to accurately predict the amount and type of expenses they will have to pay to handle my case. Some of these expenses are court filing fees, court reporter fees, traveling and lodging expenses, consultant fees, expert witness fees, computer service fees, charges for telephone, postage and photocopying, and charges for the preparation of trial exhibits.

To date, my lawyers have already expended over $30,000.00 in the prosecution of my claims for depositions, discovery and experts. I permit my lawyers to continue to pay the expenses they decide are appropriate to handle my case. I agree to reimburse my lawyers for these expenses at the conclusion of the case.

My lawyers cannot guarantee a recovery.

### IV.    My Right to Approve A Settlement

My case cannot be settled without my approval.

### V.    Lawyers Sharing Responsibility and Fees

#### A. Division of Responsibility

My lawyers agree to share responsibility equally for the handling of my case as defined herein. I approve that my lawyers will share this responsibility.

#### B. Division of Fees

In the event my lawyers obtain a recovery for me, my lawyers agree to divide the lawyers' fees as follows:

RHL will receive 43.75% of the recovery discussed in Section II.A of this Agreement, P&A will receive 43.75% of the recovery discussed in Section II.A of this Agreement, and DL will receive 12.5% of the recovery discussed in Section II.A of this Agreement, up to a maximum of $75,000.00. Any amount above that shall be shared equally between RHL and P&A.

I approve the division of my lawyers' fees.

VI.   **What This Agreement Covers**

This agreement states the entire agreement among me, P&A, RHL and DL. This Agreement is to be interpreted in accordance with District of Columbia law. The terms of this Agreement may only be changed by a separate written agreement signed and dated by me and my lawyers.

We have read this Agreement and agree to all of its terms.

_____          5-31-03
George Valdivia                                        Date

_____          6/3/03
E. Wayne Powell                                      Date
Powell & Associates, P.C.

_____          6/3/03
Jonathan E. Halperin                                Date
Regan, Halperin & Long, P.L.L.C.

_____          _____
Doug A. Lines                                          Date
Law Offices of Douglas A. Lines, P.C.

## JOINT RETAINER AGREEMENT

### I.    Purpose of This Agreement

I, Dominic Novak, hire E. Wayne Powell, Esquire of Powell & Associates, P.C. ("P&A"), Jonathan Halperin, Esquire of Regan, Halperin & Long, PLLC ("RHL"), and Douglas Lines, Esquire of the Law Offices of Douglas Lines, P.C. ("DL") to represent me in my claims against Capital Management and Development, Inc., SJG Properties, Zei, Inc., Ricky Waller, Michael Braxton, and the individual criminal defendants. When used in this Agreement, "my lawyers" means RHL, P&A, and DL.

### II.   My Responsibility to Pay Lawyers' Fees

#### A.  Lawyers' Fees If There is No Appeal

I agree to pay my lawyers forty percent (40%) of the total recovery whether this recovery is obtained by settlement or by judgment after a trial. In no event will the fee I pay for legal services in handling my case ever fall below that amount which is equivalent to forty percent (40%) of the total recovery as defined below.

#### B.  Lawyers' Fees If There is an Appeal

If there is an appeal of a judgment, I agree to pay my lawyers for their service forty percent (40%) of the total recovery, regardless of whether this recovery is obtained by settlement after the appeal has been filed or by way of a ruling by the higher court.

#### C.  Definition of Total Recovery

The total recovery is the total amount recovered by the settlement or judgment including any amount recovered as compensatory damages, punitive damages and interest. There is nothing to be subtracted in determining total recovery.

#### D.  Settlement Payments Over a Period of Time.

In the event my case is settled by an agreement which calls for an initial cash payment and additional payments over a period of time, my lawyers may decide to either:

1)   Be paid all of their fees from the initial cash payment based upon the present value of all payments ("present value" means the total cost to the defendant of all settlement payments, present or future, as if they were all made on the date of settlement); or

2)   Be paid their fees, of forty percent (40%) out of each payment as it is received.

### E. Lawyers' Fees Are Not Set By Law

My lawyers' fees are not set by law. I have agreed to pay these lawyers' fees after I discussed them with my lawyers.

III.  **My Responsibility to Pay Expenses**

My lawyers must pay expenses to handle my case. It is difficult for my lawyers to accurately predict the amount and type of expenses they will have to pay to handle my case. Some of these expenses are court filing fees, court reporter fees, traveling and lodging expenses, consultant fees, expert witness fees, computer service fees, charges for telephone, postage and photocopying, and charges for the preparation of trial exhibits.

To date, my lawyers have already expended over $30,000.00 in the prosecution of my claims for depositions, discovery and experts. I permit my lawyers to continue to pay the expenses they decide are appropriate to handle my case. I agree to reimburse my lawyers for these expenses at the conclusion of the case.

My lawyers cannot guarantee a recovery.

IV.  **My Right to Approve A Settlement**

My case cannot be settled without my approval.

V.  **Lawyers Sharing Responsibility and Fees**

A. Division of Responsibility

My lawyers agree to share responsibility equally for the handling of my case as defined herein. I approve that my lawyers will share this responsibility.

B. Division of Fees

In the event my lawyers obtain a recovery for me, my lawyers agree to divide the lawyers' fees as follows:

RHL will receive 43.75% of the recovery discussed in Section II.A of this Agreement, P&A will receive 43.75% of the recovery discussed in Section II.A of this Agreement, and DL will receive 12.5% of the recovery discussed in Section II.A of this Agreement, up to a maximum of $75,000.00. Any amount above that shall be shared equally between RHL and P&A.

I approve the division of my lawyers' fees.

VI.  <u>What This Agreement Covers</u>

This agreement states the entire agreement among me, P&A, RHL and DL.  This Agreement is to be interpreted in accordance with District of Columbia law.  The terms of this Agreement may only be changed by a separate written agreement signed and dated by me and my lawyers.

We have read this Agreement and agree to all of its terms.

_____        5-28-03
Dominic Novak                            Date

_____        6/3/03
E. Wayne Powell                          Date
Powell & Associates, P.C.

_____        6/3/03
Jonathan E. Halperin                     Date
Regan, Halperin & Long, P.L.L.C.

_____        _____
Doug A. Lines                            Date
Law Offices of Douglas A. Lines, P.C.

EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DOMINIC NOVAK, <u>et al</u>.                    :

     Plaintiffs,                              :

                                        **Case No. 1:11-cv-00468**

     v.                                        :

                                        **Judge Richard W. Roberts**

DOUGLAS A. LINES, P.C., <u>et al</u>.        :

     Defendants.                              :

## PLAINTIFF PATRICK M. REGAN, ESQ.'S ANSWERS TO DEFENDANT DOUGLAS A. LINES, ESQ.'S FIRST SET OF INTERROGATORIES

Plaintiff, Patrick M. Regan, answers the following interrogatories propounded herein and states as follows:

(a)    The information contained in these answers is being provided in accordance with the provisions and intent of the Federal Rules of Civil Procedure which require the disclosure of all facts which may be relevant or may lead to the discovery of relevant information. Accordingly, the party answering these interrogatories, by providing the information requested, does not waive objections to its admission in evidence on the grounds of materiality or relevancy or other proper grounds for objection.

(b)    The information supplied in these answers is not based solely on the knowledge of the executing party, but includes knowledge of the party, their agents, representatives and attorneys unless privileged.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Professional Responsibility, when attorneys such as the Defendant abandon the representation of clients, they are not entitled to fees under such circumstances.

11.    Please identify and state in detail all facts upon which you rely in support of your contention that the Defendants were discharged from the Novak action as alleged in your Complaint.

Answer:    Plaintiff incorporates, by reference, as if fully set forth herein, his answer to No. 10 above.  In addition, Plaintiff states that to the extent it is at some point determined that Defendants did not abandon Mr. Novak's claim, they were discharged by Mr. Novak when they elected not to sign the retainer agreement signed by Mr. Novak in June 2003.

12.    Please state as fully and specifically as possible, the date, time, place, how, and under what circumstances you became aware that Defendants "attempted to unethically assert claims for several hundred thousand dollars of legal fees for work allegedly performed" on the Novak litigation as alleged in your Complaint.

Answer:    Mr. Regan learned of this unethical attempt when he was served with the lawsuit filed by Defendants in Virginia.

13.    State fully, precisely, and in detail the location, amount, source, and date of deposit of funds placed and/or held in escrow, settlement or trust account by you to compensate Defendant Lines as alleged in your Complaint.

Answer:    From the settlement of Mr. Novak's claims, approximately $69,000.00 has remained in the law firm trust account.  To the extent that at some future

- 8 -

date it is determined that Mr. Novak owes any funds to the Defendants, any amount would be paid from the funds remaining in the trust account, and the balance will be distributed to Mr. Novak. Plaintiffs are producing to defense counsel information and data from the expense/cost ledger in the underlying *Novak* litigation which details receipt of the funds representing the verdict and interest owed, as well as the distribution of those funds to Mr. Novak, payment of attorneys' fees, reimbursement of litigation expenses and other disbursements. That data will show that approximately $69,000.00 has remained in the Regan Zambri & Long Client Trust Account from the time the funds were received through the present and have not been distributed to Mr. Novak, his attorneys, or any other individual or entity. As indicated above, those funds represent Mr. Novak's funds, and to the extent it is determined that he owes attorneys' fees to the Defendants, they will be paid from those funds and any remaining balance distributed to Mr. Novak.

14. State fully, precisely, and in detail the location, source, amount, and date of receipt of funds dispersed to you as compensation or to satisfy verdict(s), settlement(s), sanctions, costs, attorneys fees or any other amount owed in connection with the Novak action.

Answer: Defendants have previously received a copy of the Distribution Statement setting forth the distribution of funds resulting from the verdict in Mr. Novak's favor. The total amount included the verdict plus applicable interest consistent with the rules of this Court. In addition to those funds, in the fall of 2007,

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 9 -

frivolous, baseless and amounts to an abuse of process. It has caused Plaintiff and his law firm, as well as others, damages as set forth in the Complaint filed in this action.

The answer to this interrogatory will be supplemented, if appropriate, pending completion of additional discovery.

16.     If you have in your possession any statements regarding any of the facts or matters alleged in the Complaint, state the date such statement was given, the name and address of the person(s) that provided each statement, and the name(s) and addresses of the present custodian(s).

<u>Answer</u>:     Plaintiff objects to this interrogatory on the grounds that it seeks to obtain information that is privileged as attorney-client communication or protected from disclosure as attorney work product. Without waiving any and all objections that may apply, Plaintiff states that there are no statements responsive to this request other than statements that were generated in connection with Mr. Novak's underlying civil action.

## AFFIRMATION

**I HEREBY ACKNOWLEDGE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING RESPONSES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, RECOLLECTION AND BELIEF.**

L/15/2011
Date

Patrick M. Regan

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 14 -

EXHIBIT D

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Regan, Zambri & Long PLC
To Victor E. Long, Esq, Apt
1919 M. Street N.W. Ste 350
Washington, DC 20036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☑ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Neil Ibani    3/2/11

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7009 1410 0002 5960 5117

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



UNITED STATES POSTAL SERVICE

• Sender: Please print your name, address, and ZIP+4 in this box •

W.R. Baldwin, III P.C.
5600 Grove Avenue
Richmond, Virginia 23226

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

.

EXHIBIT E

1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
DOMINIC NOVAK, ET AL.,          .    Case No. 1:11-CV-00468
                                .    (JMF)
              Plaintiffs,       .
                                .    Washington, D.C.
       v.                       .    July 27, 2011
                                .
DOUGLAS A. LINES, P.C.,         .
                                .
ET AL.,                         .
              Defendants.       .
.   .   .   .   .   .   .   .   .   .   .   .   .
```

SCHEDULING CONFERENCE
BEFORE THE HONORABLE JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:      Regan, Zambri & Long, PLLC
                         By  PATRICK M. REGAN, ESQ.
                         1919 M Street, N.W.
                         Suite 350
                         Washington, DC 20036-3513

For the Defendants:      Eccleston & Wolf, P.C.
                         By:  JUSTIN M. FLINT, ESQ.
                         2001 S Street, N.W.
                         Suite 310
                         Washington, DC 20009

1        (Proceedings commenced at 2:57 p.m.)

2              THE CLERK:  This is Civil Case, Year 2011-

3   468.  Dominic Novak, et al. v. Douglas A. Lines, P.C.,

4   et al..

5              Patrick Regan for the Plaintiff.

6              Justin Flint for the Defendants.

7              This is a scheduling conference.

8              Mr. Flint, would you please introduce your

9   parties at your table for the record.

10             MR. FLINT:  Good afternoon, Your Honor.

11             Justin Flint on behalf of Douglas Lines and

12  Douglas Lines, P.C., along with my intern, Jason Stern

13  and my colleague, Steve Kushnir.

14             THE COURT:  Thank you.

15             Apparently Mr. Regan is too shy to introduce

16  himself.

17      (Laughter.)

18             THE COURT:  Or he assumes everybody knows who

19  he is.

20      (Laughter.)

21             MR. REGAN:  Good afternoon, Your Honor.

22  Patrick Regan on behalf of the Plaintiffs.

23             THE COURT:  Thank you.

24             All right.  I have reviewed the pleadings in

25  this case and I'm afraid, not afraid, my take on this

1   is somewhat different from where counsel are, and I
2   want to address those concerns because what I think I'm
3   going to do is require some additional briefing on some
4   issues that are troubling me.

5          They are troubling me because they go to my
6   jurisdiction which, of course, under Rule 12, I must
7   resolve before I do anything else, at least the first
8   few do, and I'll explain the other.

9          The first problem I have, and since I'm going
10  to require supplemental briefing and you're hearing
11  this for the first time, please don't feel you're being
12  ambushed because I'm anxious to hear what you have to
13  say after you're given a chance to have some thought,
14  and I've got some cases I want you to look at, as well.

15         The first question I have that I'm concerned
16  about, or thinking about is, "Why does the law firm,
17  Mr. Regan's firm, have standing, independent of Novak,
18  to press the claim?"

19         The second concern I have goes to the
20  jurisdiction over the subject matter, which speaks to
21  the justiciability of this controversy, as being a case
22  in controversy under Article 3.

23         I commend Counsel's attention to the famous
24  Supreme Court decision in <u>Los Angeles v. Lyons</u>.  That
25  was the choke-hold case.  Lyons brought an action

1    somewhere in California saying the Los Angeles Police
2    were using a choke hold when they arrested people, and
3    it was a violation of due process because it was
4    dangerous, people were being choked.

5         The Supreme Court reversed the determination
6    implicit or explicit by the lower court, that it had
7    jurisdiction over the subject matter, and it said that
8    unless and until Lyons should show something more than
9    a theoretical possibility of (a) being arrested and (b)
10   being subject to the choke hold, the case was not
11   justiciable, it was premature.

12        In that context, it seems to me that, Mr.
13   Line -- Is it Lines, is that how you say it, sir?
14   Lines?

15        MR. FLINT:  Right.

16        THE COURT:  There are only two possibilities
17   in the Virginia court for Mr. Lines.  He's going to win
18   or he's going to lose.  If he loses, Mr. Novak cannot
19   possibly be harmed, and since, at this point, all I
20   know is that the chances of his winning are roughly
21   equal to the chances of his losing, why is that matter
22   justiciable?  Is it not premature, and isn't Mr. Novak
23   fully protected in his interests, by the exercise or
24   jurisdiction by the district court -- I'm sorry, by the
25   Common (unintelligible) court in the state of Virginia?

1        In that context, there is a related question,

2   but the related question, I hasten to add, does not

3   pertain to the Court's jurisdiction, but inquires

4   instead, whether the Court, assuming jurisdiction over

5   the subject matter, should nevertheless abstain?

6        The leading case is <u>Colorado River Water</u>

7   <u>Conservation District v. United States</u>, at 424 U.S.

8   800.  There is reference there to the Court's necessity

9   of keeping in mind the:

10            "Principles unrelated to considerations of

11            proper constitutional adjudication and regard

12            for federal/state relations which govern in

13            situations involving the contemporaneous

14            exercise of concurrent jurisdictions, either

15            by federal courts or by state and federal

16            courts.  These principles rest on

17            considerations of wise judicial

18            administration, giving regard to conservation

19            to judicial resources and the comprehensive

20            disposition of litigation."

21        What that means is that when there are

22   federal and state concurrent prosecutions, there is a

23   requirement, at least, that the Court consider whether

24   proper considerations of comity, federalism should lead

25   the Federal Court to stay its hands.

1         In that context, let me bring to your

2 attention some other cases.

3         The oldest -- The older is a case called

4 <u>Reiman v. Bromley Smith</u>, which appears at 12 F.3d 222

5 in 1993, by our court of appeals.

6         The second one is <u>Handy v. Shaw Bransford</u>,

7 which appears at 325 F.3d 346, decision by our circuit

8 in 2003.

9         While they differ in their facts, obviously,

10 they are the same in their holding.  In both instances

11 the District Court was reversed for failing to make a

12 conscientious examination of the factors identified in

13 <u>Colorado River</u> that pertained to whether a Court should

14 abstain.

15         I also commend your attentions to a very

16 recent decision, not very recent, I'm sorry, this last

17 year, but it was by Judge Kollar-Kotelly.  It's in a

18 case I'm familiar with because I handled the discovery

19 in the case.  It's <u>1443 Chapin Street</u>.  It appeared at

20 718 F.Supp.2d 78 by Her Honor on June 21st, 2010.

21         These cases all grapple with the pertinent

22 considerations, and their application when there are

23 federal and state concurrent considerations.

24         So what I would like to do, before we do

25 anything else, because at least one aspect of this goes

1   to the Court's jurisdiction over the subject matter,

2   and under Rule 12, if I conclude that I lack

3   jurisdiction, I must "dismiss the action."  I've got to

4   do this before I do anything else.

5          So what I think I will do is deny without

6   prejudice, the motions that are before me, which are to

7   dismiss, which raise these issues, but peripherally,

8   too peripherally for my ability to make sure that the

9   parties are fully heard before I rule, and in lieu

10  thereof, set a schedule for the briefing on these

11  issues.

12         Given the structure of where we are, and I

13  suppose it seems to be more appropriate that this be a

14  defendant's motion to dismiss for lack of jurisdiction

15  over the subject matter or, in the alternative, to

16  abstain.

17         Mr. Flint, how much time would you like to

18  get me that brief?

19         MR. FLING:  Your Honor, given the current

20  time of the year, if we could have three weeks I'd

21  appreciate it.

22         THE COURT:  That's perfectly acceptable.

23         May I ask what deadlines you're facing in the

24  Virginia, if any?

25         UNIDENTIFIED SPEAKER:  Your Honor, there is a

1  demurrer hearing set for October.  I believe it's

2  October 19th.

3          THE COURT:  Well, I'll resolve this long

4  before then.

5          MR. FLINT:  Actually, is there any way we can

6  stay the current discovery until we resolve this issue?

7          THE COURT:  Yes.  Well, unless and until I

8  decide I have jurisdiction over the subject matter

9  nobody's going anywhere, so we'll have to stay that

10  until I resolve that.  I'll issue an order to that

11  effect, maybe a brief memorandum to accompany it.

12          Mr. Regan, would you like any amount of time

13  or?

14          MR. REGAN:  Judge, I'm just looking at that.

15          Three weeks puts us to the seventeenth.  I

16  think if we have until the second, that's fine.  That's

17  a little less than three weeks.  It's about --

18          THE COURT:  That's the second.

19          Is that the Friday before Labor Day?

20          MR. REGAN:  Yes, it is, Your Honor.

21          THE COURT:  If you want the next week, take

22  it.  It's no big deal.

23          Don't -- Do you have any plans for that

24  weekend?

25          MR. REGAN:  You know, I --

```
 1              THE COURT:  Not that it's any of my business,
 2    but if you wanted some time to be with your family,
 3    take it.
 4              MR. REGAN:  The -- I start a trial on the
 5    twelfth, so I -- we'll need to get it done by the
 6    second anyway.
 7              THE COURT:  All right.  Good.  All right.
 8              And then, Mr. Flint, can you get me a reply
 9    in seven days thereafter?
10              MR. FLINT:  No problem, Your Honor.
11              THE COURT:  All right.  We'll set a -- We'll
12    issue a minute order to that effect, denying the motion
13    without prejudice, and it will be accompanied by a very
14    brief memorandum which I will once again specify the
15    issues I wish to be briefed.
16              Acceptable to everybody?
17              MR. FLINT:  Yes, Your Honor.
18              MR. REGAN:  Yes, Your Honor.
19              THE COURT:  Okay.
20              MR. REGAN:  Thank you very much.
21              THE COURT:  I came in here for a five minute
22    status conference, went away with an obligation to
23    write a brief.
24              Not fair is it?
25              Where's Mr. Handleman?
```

```
 1              MR. FLINT:  He's at the beach, Your Honor.
 2              THE COURT:  Oh God, I thought he'd be at a
 3    Red Sox game.
 4         (Laughter.)
 5              THE COURT:  Good seeing all of you.
 6              MR. FLINT:  Thank you.
 7              MR. REGAN:  My pleasure, Your Honor.
 8         (Proceedings concluded at 3:07 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings

in the above-entitled matter.


/s/_____          August 2, 2011

STEPHEN C. BOWLES

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DOMINIC NOVAK, *et al.*,

                **Plaintiffs,**

      v.

DOUGLAS A. LINES, P.C., *et al.*,

                **Defendants.**

                                 **Civil Action No. 11-468 (JMF)**

## MEMORANDUM ORDER

As indicated at the hearing held today, I wish counsel to brief more thoroughly the following questions:

1. Does this case present a case or controversy under Article III of the Constitution, or is the potential harm to be done by defendant Douglas A. Lines' prosecution of the case in the Commonwealth, <u>Douglas A. Lines, P.C., *et al.* v. Patrick M. Regan, *et al.*</u>, CL10-2380, too remote and hypothetical, such that this case is rendered non-justiciable?

2. Do Regan Zambri & Long, PLLC., and Patrick M. Regan, Esq., have standing, independent of plaintiff Dominic Novak, to prosecute this action?

3. Assuming for the sake argument that the Court has jurisdiction over the subject matter, should it nevertheless abstain from exercising that jurisdiction in light of the concurrent proceedings in the Commonwealth of Virginia? Parties are advised to consider the following cases: <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), <u>Handy v. Shaw, Bransford, Veilleux & Roth</u>, 325 F.3d 346 (D.C. Cir. 2003), <u>Reiman v. Bromley Smith</u>, 12 F.3d 222

Case 1:11-cv-00468-JMF   Document 21   Filed 07/27/11   Page 2 of 2

(D.C. Cir. 1993), <u>1443 Chapin Street, LP, v. PNC Bank, Nat'l Assoc'n</u>, 718 F.

Supp. 2d 78 (D.D.C. 2010).

It is, therefore, hereby

**ORDERED** that <u>Defendant's Motion to Dismiss Plaintiffs' Complaint</u> [#8] is **DENIED**

without prejudice.  It is further, hereby,

**ORDERED** that <u>Plaintiffs' Request for Oral Argument Concerning Defendants' Motion</u>

<u>to Dismiss</u> [#10] is **DENIED** as moot.  It is further, hereby,

**ORDERED** that defendants file a motion to dismiss for lack of jurisdiction over the

subject matter and lack of standing, or, in the alternative, to abstain from exercising jurisdiction,

by August 17, 2011.  It is further, hereby,

**ORDERED** that plaintiffs file a response to defendants' motion to dismiss by September

2, 2011.  It is further, hereby,

**ORDERED** that defendants file a reply by September 9, 2011.  Finally, it is, hereby,

**ORDERED** that discovery is stayed in this case until the motion to dismiss has been

resolved.

**SO ORDERED.**

Digitally signed by John M.
Facciola
DN: c=US, st=DC, ou=District of
Columbia,
email=John_M._Facciola@dcd.u
scourts.gov, o=U.S. District
Court, District of Columbia,
cn=John M. Facciola
Date: 2011.07.27 16:56:08 -04'00'

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOMINIC NOVAK, et al.                       *

       Plaintiffs                   *

                               *    CASE NO:  1:11-cv-00468(JMF)

         v.                     *

DOUGLAS A. LINES, P.C., et al.       *

       Defendants             *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>ORDER</u>

Upon consideration of Defendants Douglas A. Lines, P.C. and Douglas A. Lines, Esq.'s Motion to Dismiss Plaintiffs Dominic Novak, Regan Zambri & Long, P.L.L.C., and Patrick M. Regan, Esq.'s Complaint for Lack of Subject Matter Jurisdiction, or in the Alternative, to Abstain, the Opposition thereto, Defendants' Reply Memorandum, and the entire record in this case, it is this _____ day of _____ 2011 hereby

**ORDERED** that the Motion is **GRANTED**; and it is further

**ORDERED** that the Complaint is hereby **DISMISSED** in its entirety for lack of subject matter jurisdiction.

_____
Judge John M. Facciola

Copies To:

Justin M. Flint (#491782)
Aaron L. Handleman (#48728)
Eccleston & Wolf, P.C.
1629 K Street, NW
Suite 260
Washington, DC 20006
Tel:  (202) 857-1696
Fax:  (202) 867-0762

Patrick M. Regan (#336107)
Paul Cornoni (#489398)
Regan Zambri & Long, PLLC
1919 M Street, NW, Suite 350
Washington, DC 20036
Tel: (202) 463-3030
Fax: (202) 463-00667